Karen PAGEL and Paul
Pagel, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. C–97–20091 EAI.

United States District Court,
N.D. California,
San Jose Division.

Dec. 19, 1997.

Charles F. Hawkins, Hawkins, Blick &
Fitzpatrick, San Jose, CA, for Plaintiffs Karen and Paul Pagel.

Yonkel Goldstein, Asst. U.S. Attorney, San Jose, CA, for Defendant U.S.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

INFANTE, United States Magistrate Judge.

### I. INTRODUCTION

Defendant United States of America moves, pursuant to Fed.R.Civ.P. 56, for summary judgment, and, in the alternative, for summary adjudication on Plaintiffs' First Amended Complaint. Defendant's motion for summary judgment is based on the claim that the Court lacks subject matter jurisdiction because Plaintiffs failed to exhaust their administrative remedies under the Federal Tort Claims Act. Defendant's alternative motion for summary adjudication, which is directed to Plaintiff Karen Pagel's personal injury claims, is also based on the exhaustion doctrine. The Court has reviewed the parties' written submissions, including their supplemental memoranda of points and authorities, and considered the oral argument presented at the hearing. For the reasons given below, Defendant's motion for summary judgment and alternative motion for summary adjudication are denied.

### I. BACKGROUND

This case arises out of Plaintiff Karen Pagel's trip-and-fall accident on the sidewalk outside of the United States Post Office located at 1175 Branham Lane in San Jose, California ("Robertsville Post Office"), on September 27, 1994. Ms. Pagel claims that her accident was caused by the "uneven surface" of the sidewalk. *See Declaration of Yonkel Goldstein in Support of Defendant's Motion for Summary Judgment ("Goldstein Decl."), Exh. 1.* Ms. Pagel allegedly suffered injuries to her left hand and arm, as well as her shoulder and neck. *Goldstein Decl., Exh. 7.* The most serious injury claimed is the Reflex Sympathetic Dystrophy which allegedly developed in the upper portion of her left arm. According to Ms. Pagel, the condition has effectively rendered her left arm useless. Plaintiff Paul Pagel, Ms. Pagel's husband, sues for loss of consortium. *Goldstein Decl., Exh. 4.*

Plaintiffs retained attorney Philip Tobin to assist them in presenting their personal injury claim to the Postal Service. Mr. Tobin wrote a letter to the Postal Service in 1995 indicating that Ms. Pagel intended to present a personal injury claim. In response, Joe Rallo, a Customer Services Analyst for the Postal Service, wrote a letter on July 11, 1995 to Mr. Tobin acknowledging receipt of his letter and enclosing blank personal injury claim forms. *See Declaration of Charles F. Hawkins in Opposition to Motion for Summary Judgment ("Hawkins Decl."), Exh. 1.* In the July 11, 1995 letter, Mr. Rallo stated:

> **To process a claim for personal injury, a written report from the attending physician describing the injury sustained, nature and extent of injury, nature and extent of the treatment, the degree of permanent disability, if any, the prognosis and the period of hospitalization or disability.**
>
> Itemized medical and hospital bills must be submitted and should cover only treatment or medications needed as a result of the injuries sustained in the accident.
>
> Failure to provide this information will delay the processing of your client's claim. Our claim number is NV95–001. Please utilize this number in future references.

*Hawkins Decl., Exh. 1 (emphasis in original).* On November 20, 1995, Ms. Pagel presented her claim on the official Standard Form 95. *Goldstein Decl., Exh. 1.* Ms. Pagel's claim related the following facts regarding the subject accident:

> While leaving the Robertsville Post Office at 1175 Branham Lane, San Jose, CA, I tripped on the uneven surface of the walkway heading to the parking lot. I fell forward; my left hand was outstretched in an attempt to break my fall and protect my face. My right hand was against my face to protect my face against the concrete. Both knees were scraped and bruised.

*Goldstein Decl., Exh. 1.* She identified two witnesses to the incident in her November 20, 1995 claim. *Goldstein Decl., Exh. 1.* Ms. Pagel also attached her Kaiser medical records from September 27, 1994 through July

28, 1995 to the claim. *Goldstein Decl., Exh. 1.*

On or about December 20, 1995, Mr. Tobin received a letter from Marlene Yacap, a Paralegal Specialist in the Postal Service law department, indicating that Ms. Pagel's November 20, 1995 claim was inadequate because "[a] sum certain demand was not made." *Hawkins Decl., Exh. 2.*[1] Ms. Yacap told Mr. Tobin that the Postal Service could not consider Ms. Pagel's claim at all until "you request a sum certain amount." *Hawkins Decl., Exh. 2.* In addition, Ms. Yacap advised:

> In support of your client's claim for personal injury, you should submit a written report from the attending physician showing the nature and extent of injury, the nature and extent of treatment and dates thereof, the dates and results of any x-rays taken, any preexisting condition which might have a bearing on the injuries alleged herein, the degree of partial or permanent disability, if any, the diagnosis, the prognosis, and the period of hospitalization or incapacitation. Itemized bills for all hospital and medical expenses *must* be provided.

*Hawkins Decl., Exh. 2 (emphasis in original).*

Mr. Tobin filed an amended claim on Ms. Pagel's behalf on April 2, 1996.[2] *Goldstein Decl., Exh. 2.* The amended claim was nearly identical to the original November 20, 1995 claim, except that it claimed precisely $1,009,833.35 in damages. *Goldstein Decl ., Exh. 2.* Ms. Pagel also provided the Postal Service with additional medical records and billing records with the April 2, 1996 amended claim. *Goldstein Decl., Exh. 2 and 3.* Finally, Ms. Pagel attached a copy of a narrative report prepared by orthopedic surgeon Dr. John Fortune dated March 1, 1996. *Hawkins Decl., Exh. 3; Goldstein Decl., Exh. 7.*

Dr. Fortune's March 1, 1996 report summarized the treatment Ms. Pagel received at Kaiser since September 27, 1994 and the progress made in her recovery. *Goldstein Decl., Exh. 7.* According to the report, Ms. Pagel had made some progress but was still undergoing treatment for injuries to her left hand and arm. *Goldstein Decl., Exh. 7.* Dr. Fortune concluded that surgery was not indicated although Ms. Pagel "may have a permanent residual functional deficits in her left hand and left upper extremity." *Goldstein Decl., Exh. 7.* Finally, Dr. Fortune noted that he could not "specifically quantify those deficits at this point" because Ms. Pagel was still receiving therapy. *Goldstein Decl., Exh. 7.*

In April 1996, Mr. Tobin associated Charles Hawkins as co-counsel in this matter. *Hawkins Decl., Exh. 6.* On June 18, 1996, Mr. Hawkins filed another amended personal injury claim on behalf of Ms. Pagel, as well as a loss of consortium claim on behalf of Mr. Pagel. *Goldstein Decl., Exhs. 3 and 4; Hawkins Decl., Exh. 5.* Ms. Pagel's June 18, 1996 amended claim related the following facts regarding the subject accident:

> Claimant tripped on a raised portion of the sidewalk which leads from the Robertsville Post Office at 1175 Branham Lane, San Jose, CA to the parking lot adjacent to said post office. Claimant fell forward with her left hand put stretched in an attempt to break her fall and protect her face and as a consequence suffered a severe injury to her left arm which has been diagnosed as Reflex Sympathetic Dystrophy and which has disabled that extremity. She also sustained injuries to both knees and various scrapes and bruises. The walk way in question was repaired by the post office shortly after this incident and the location of claimant's fall can therefore be fixed with particularity.

*Goldstein Decl., Exh. 3.* In addition, Ms. Pagel raised her damages claim from $1,009,833.35 to $1,500,000.00. *Goldstein Decl., Exh. 3.*

Mr. Hawkins also provided Ms. Yacap with photocopies of photographs Ms. Pagel or her

---

1. Mr. Tobin had written on the November 20, 1995 claim that Ms. Pagel's demand of $1,000,000.00 in damages was an "estimate." Goldstein Decl., Exh. 1.

2. An amended claim may be presented "at any time prior to final Postal Service action or prior to the exercise of the claimant's option under 28 U.S.C. § 2675(a)." 39 C.F.R. § 912.5(b).

agents took of the sidewalk outside the Robertsville Post Office shortly after the accident. *Hawkins Decl., Exh. 5.* Ms. Yacap had requested copies of the photographs in a letter to Mr. Tobin dated May 1, 1996. *Hawkins Decl., Exh. 4.*

Mr. Pagel's June 18, 1996 loss of consortium claim contained the following factual allegations:

> Claimant is married to co-claimant Karen Pagel who was seriously injured in the fall on the above date. As a result of his wife's injuries, claimant Paul Pagel has suffered a loss of consortium by reason of his wife's permanent inability to engage in the customary duties, activities, endeavors, past times and recreational activities in which she was normally engaged prior to her injury.
>
> By reason of Mrs. Pagel's injuries, claimant himself has assumed many of the duties and functions formerly performed by his wife and has ceased to receive the enjoyment and benefit of many of the social, personal and recreational activities in which he and his wife were normally engaged.

*Goldstein Decl., Exh. 4.* Mr. Pagel's loss of consortium claim demanded $500,000.00 in damages. *Goldstein Decl., Exh. 4.*[3]

On July 18, 1996, Mr. Hawkins wrote a letter to Ms. Yacap to provide additional information regarding Ms. Pagel's physical condition and to send further billing records from Kaiser.[4] *Hawkins Decl., Exh. 6.* Mr. Hawkins also provided Ms. Yacap with another copy of Dr. Fortune's March 1, 1996 narrative medical report as an enclosure to his letter. Finally, Mr. Hawkins expressed his opinion that the Pagels' claims could not be settled through the administrative claims process and urged Ms. Yacap to quickly deny

their claims so that a lawsuit could be filed. *Hawkins Decl., Exh. 6.* Mr. Hawkins wrote:

> This is an extremely serious case and while I mean no disrespect, experience has taught me that there is very little chance that the Federal Government will respond to this claim with a settlement offer which would be acceptable to Mrs. Pagel and her husband. This is a case which needs full discovery and you should see for yourself the extent of Mrs. Pagel's disabling injury. I therefore think it would be appropriate for you to promptly deny the claim so that I can file suit and we can begin moving this matter towards resolution by settlement or trial.

*Hawkins Decl., Exh. 6.*

The Postal Service did not respond to Mr. Hawkins' request for a summary denial of the Pagels' claims. Instead, Ms. Yacap wrote to Mr. Tobin on August 22, 1996 to request additional information regarding Ms. Pagel's medical condition:

> In support of your clients' claims for personal injury, you should submit a **final written report** from the attending physician showing the **nature and extent of injury,** the nature and extent of treatment and dates thereof, the dates and results of any X-rays taken, any **preexisting condition which might have a bearing on the injuries alleged herein,** the degree of partial or permanent disability, if any, the diagnosis, the prognosis, and the period of hospitalization or incapacitation.
>
> The March 1, 1996 medical report from The Permanente Medical Group, Inc. indicated that Ms. Pagel was referred back to hand therapy rehabilitation for and [sic] additional two to three months. Therefore, she should have attained permanent and stationary condition in the month of June 1996. The final report should include

Mr. Pagel's loss of consortium claim will therefore not be determined herein.

---

**3.** The Postal Service does not contend that Mr. Pagel's loss of consortium claim was inadequate under its regulations. Rather, the Postal Service claims that summary judgment against Mr. Pagel is appropriate in this case because the viability of his claim depends on the success of his wife's claim and her claim fails because she did not adequately exhaust her administrative remedies. *See Memorandum of Points and Authorities in Support of Motion for Summary Judgment ("Defendant's Memo"), 12:15–13:9.* The adequacy of

**4.** It is unclear whether the billing records, described in the July 18, 1996 letter as a "Statement of Benefits," provided the Postal Service with any new information. Mr. Hawkins represented that he believed the billing information was "current to mid April 1996 and shows a running balance of almost $10,000.00."

any permanent or partial disability ratings. Also forward copies of the additional hospital and/or medical bills.

*Goldstein Decl., Exh. 5 (emphasis in original).* Mr. Hawkins wrote to respond to Ms. Yacap's August 22, 1996 letter on August 30, 1996. *Goldstein Decl., Exh. 10.* In the August 30, 1996 letter, Mr. Hawkins explained that he could not provide the requested information:

> Mrs. Pagel has a permanent condition for which she will need ongoing treatment. There is no final report in this case and probably never will be. Furthermore, this is not a worker's compensation action where it is appropriate to talk about disability ratings, either permanent or partial. [¶] We have previously forwarded medical bills to you attached to the Amended Claim. We have no further medical bills from Kaiser Hospital at this point.

*Goldstein Decl., Exh. 10.* Mr. Hawkins also again requested that the Postal Service deny the Pagels' claims so that a lawsuit could be commenced. *Goldstein Decl., Exh. 10.*

Ms. Yacap's written response to Mr. Hawkins' August 30, 1996 letter was sent on September 25, 1996. *Goldstein Decl., Exh. 6.* In her September 25, 1996 letter, Ms. Yacap insisted that Mr. Hawkins provide the information requested in her August 22, 1996 letter:

> I am unable to properly evaluate your client's damages without the requested information. *Under 39 CFR Part 912 § 912.7(b)(1), (2) & (3), you are required to substantiate the extent of your client's injuries.* Your client has alleged a permanent disability; therefore, a medical report corroborating this claim is essential. It is customary, in this industry, for doctors to provide a prognosis for patients with permanent disabilities[.] This practice is not limited to workers compensation claims. Thus, I again request that this information to [sic] be included in the final medical report. [¶] If I do not receive the requested information within thirty (30)

days from the date on this letter, I will be forced to issue a final denial of this claim.

*Goldstein Decl., Exh. 6 (emphasis added).* Mr. Hawkins did not provide the additional requested medical information. Instead, in a letter dated October 23, 1996, Mr. Hawkins disputed Ms. Yacap's claim that the Pagels had not provided sufficient information to support their claims. *Goldstein Decl., Exh. 11.* Mr. Hawkins further stated that he had already given the Postal Service "all the material in our possession on two occasions." *Goldstein Decl., Exh. 11.*

The Postal Service issued a written denial of the Pagels' claims and sent it to Mr. Hawkins by certified mail on or about October 23, 1996. *Goldstein Decl., Exh. 12.* The denial letter indicated that the claims were denied "[f]or the reasons specified in my [Ms. Yacap's] September 25, 1996 letter." *Goldstein Decl., Exh. 12.* Finally, the denial letter informed the Pagels of their right to seek reconsideration of the decision to deny their claims and their obligation to file a civil action within "six months from the date of mailing of this letter." *Goldstein Decl., Exh. 12.*

On November 19, 1996, approximately one month after the final denial was issued, Mr. Hawkins provided Ms. Yacap with 148 pages of medical records relating to Ms. Pagel's injuries.[5] *Hawkins Decl., ¶ 17, Exh. 13.* In his cover letter transmitting the additional medical records, Mr. Hawkins informed Ms. Yacap that the Pagels did not "wish to file for reconsideration of this denial." *Hawkins Decl., Exh. 13.* Mr. Hawkins also advised Ms. Yacap that, although his clients remained willing to discuss settlement proposals, he intended to file a civil action "in the immediate future." *Hawkins Decl., Exh. 13.*

## III. DISCUSSION

### A. *Summary Judgment Standards*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genu-

---

5. During oral argument, the Postal Service represented that the 148 pages of medical records produced on November 19, 1996 did not contain the information repeatedly demanded by Ms. Yacap. Plaintiffs did not dispute this assertion.

ine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If the moving party will bear the burden of proof on an issue at trial, either because he is the plaintiff, or, as a defendant, is asserting an affirmative defense, it must establish beyond controversy all of the essential elements of the claim or defense. *See Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986).

In the present case, Defendant's motion for summary judgment and alternative motion for summary adjudication are based on its affirmative defense that Plaintiffs failed to exhaust their available administrative remedies under the Federal Tort Claims Act. Defendant has shown that no genuine issue of material fact exists regarding Plaintiffs' presentation of their administrative claims to the Postal Service. Therefore, the Court is presented with the purely legal question of whether the information and documents provided to the Postal Service by the Pagels satisfied the claim presentation requirements of the Federal Tort Claims Act.

## B. *The Claim Presentation Requirement Of The Federal Tort Claims Act*

 The Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671-80, waives the government's sovereign immunity for actions in tort. *Cadwalder v. United States,* 45 F.3d 297, 300 (9th Cir.1995) (citing *Jerves v. United States,* 966 F.2d 517, 518 (9th Cir.1992)). "The Act allows claimants to sue the government in district court provided that they first give the appropriate federal agency the opportunity to resolve the claim... [and] [t]his administrative *claim prerequisite is jurisdic-*

tional." *Id.* (citing *Jerves,* 966 F.2d at 519) (emphasis added). The claims presentation requirement is set forth in 28 U.S.C. § 2675(a), which provides:

> *An action shall not be instituted* upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, *unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.* The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim.

*Id.* (emphasis added).

In 28 U.S.C. § 2672, Congress provided that the heads of federal agencies, or their designees, are authorized to adjust and settle claims presented in accordance with the Federal Tort Claims Act. Pursuant to 28 U.S.C. § 2672, Congress authorized the Attorney General to promulgate regulations that federal agencies must follow when they "consider, ascertain, adjust, determine, compromise, and settle any claim." *Kanar v. United States,* 118 F.3d 527, 528 (7th Cir.1997).[6] One of the regulations adopted by the Attorney General, 28 C.F.R. § 14.2(a)[7], attempts to define the "claim presentation" requirement. Section 14.2(a) states:

---

**6.** The Attorney General, in turn, adopted regulations authorizing "[e]ach agency ... to issue regulations and establish procedures consistent with the regulations in this part [28 C.F.R. Part 14]." 28 C.F.R. § 14.11. The Postal Service regulations for handling claims, 39 C.F.R. Part 912, were promulgated under this delegation of authority.

**7.** In *Byrne v. United States,* 804 F.Supp. 577, 581-82 (S.D.N.Y.1992), the court noted "that 28 C.F.R. § 14.2 was amended in 1987 to specifically reference 28 U.S.C. § 2675, following a spate of decisions declining to apply the regulations to section 2675. However, the amendment cannot overcome the holdings of numerous courts finding that the Attorney General simply lacks the statutory authority to promulgate jurisdictional regulations under section 2675."

For purposes of the provisions of 28 U.S.C. 2401(b), 2672, and 2675, a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident; and the title or legal capacity of the person signing, and is accompanied by evidence of his authority to present a claim on behalf of the claimant, as agent, executor, administrator, parent, guardian, or other representative.

The requirements of 28 C.F.R. § 14.2(a) are fully incorporated in the Postal Service regulations, in 39 C.F.R. § 912.5(a).

The Attorney General also promulgated certain regulations authorizing federal agencies to require claimants to present supporting documents and information. 28 C.F.R. § 14.4(b), which relates to personal injury claims, reads as follows:

(b) *Personal injury.* In support of a claim for personal injury, including pain and suffering, the claimant may be required to submit the following evidence or information:

(1) A written report by his attending physician or dentist setting forth the nature and extent of the injury, nature and extent of treatment, any degree of temporary or permanent disability, the prognosis, period of hospitalization, and any diminished earning capacity. In addition, the claimant may be required to submit to a physical or mental examination by a physician employed by the agency or another Federal agency. A copy of the report of the examining physician shall be made available to the claimant upon the claimant's written request provided that he has, upon request, furnished the report referred to in the first sentence of this paragraph and has made or agrees to make available to the agency any other physi-

cian's reports previously or thereafter made of the physical or mental condition which is the subject matter of his claim.

(2) Itemized bills for medical, dental, and hospital expenses incurred, or itemized receipts for payment for such expenses.

(3) If the prognosis reveals the necessity for future treatment, a statement of expected expenses for such treatment.

(4) If a claim is made for loss of time from employment, a written statement from his employer showing actual time lost from employment, whether he is a full or part-time employee, and wages or salary actually lost.

(5) If a claim is made for loss of income and the claimant is self-employed, documentary evidence showing the amounts of earnings actually lost.

(6) Any other evidence or information which may have a bearing on either the responsibility of the United States for the personal injury or the damages claimed.

The provisions of 28 C.F.R. § 14.4(b) are incorporated in 39 C.F.R. § 912.7(b) of the Postal Service regulations. In fact, the two regulations are completely identical. Finally, the Postal Service regulations provide that "[i]n order to exhaust the administrative remedy provided, a claimant shall submit substantial evidence to prove the extent of any losses incurred and any injury sustained, so as to provide the Postal Service with sufficient evidence for it to properly evaluate the claim." 39 C.F.R. § 912.8.[8]

### C. *Plaintiffs Have Adequately Exhausted Their Administrative Remedies*

Defendant's position regarding the instant motion for summary judgment is succinctly stated as follows in its opening brief:

The Post Office's contention here is simple: that by refusing to provide the medical assessment regarding her level of disability, prognosis, etc.—information that was peculiarly within plaintiffs' control, as opposed to the Post Office's—plaintiffs failed to provide the Post Office with the most

---

**8.** There is no provision in 28 C.F.R. Part 14 that is similar to 39 C.F.R. § 912.8. Therefore, it would appear that 39 C.F.R. § 912.8 was adopted in violation of the express limitations set forth in 28 C.F.R. § 14.11.

basic information necessary to make a claim or for the Post Office to approve or disapprove their claims. Thus, they failed to present their claims adequately.

*Defendant's Memo, 6:24–7:2.* Defendant contends that Plaintiffs were required to provide the medical assessment information pursuant to 39 C.F.R. § 912.7(b). Defendant further contends that Plaintiffs' failure to submit the requested medical information constitutes a failure to exhaust their administrative remedies under 39 C.F.R. § 912.8.

Plaintiffs dispute Defendant's legal analysis. Plaintiffs contend that they complied with 39 C.F.R. § 912.7(b) by: (1) submitting claims on the approved Standard Form 95; (2) providing the Postal Service with Ms. Pagel's medical and billing records; and (3) providing the Postal Service with the March 1, 1996 narrative report of orthopedic surgeon Dr. John Fortune. Alternatively, Plaintiffs argue that they are not required to comply with 39 C.F.R. § 912.7(b) to exhaust their administrative remedies under 28 U.S.C. § 2675(a).

The Court disagrees with Plaintiffs' contention that they complied with 39 C.F.R. § 912.7(b), but agrees that Plaintiffs were not required to comply with said regulation to exhaust their administrative remedies.

### 1. *Plaintiffs Did Not Comply With 39 C.F.R. § 912.7(b)*

 The factual record in this case indicates that Plaintiffs provided the Postal Service with some but not all of the information and documentation required by 39 C.F.R. § 912.7(b). Although Plaintiffs did produce Dr. Fortune's March 1, 1996 narrative report, as well as medical and billing records from Kaiser, they did not submit any information regarding (1) the degree of Ms. Pagel's disability, (2) the prognosis for an improvement of her condition (Reflex Sympathetic Dystrophy), or (3) her diminished earning capacity. *See* 39 C.F.R. § 912.7(b)(1). Furthermore, Plaintiffs failed to provide the Postal Service with "a statement of expected expenses for such [future] treatment" required by 39 C.F.R. § 912.7(b)(3). Finally, Plaintiffs did not submit any information or records relating to "any preexisting condition which might have a bearing on the injuries alleged herein." *See Goldstein Decl., Exh* .[9] Therefore, Defendant's motion for summary judgment, or motion for summary adjudication as to Ms. Pagel's claim, would be granted if compliance with 39 C.F.R. § 912.7(b) is a jurisdictional prerequisite to a civil action against the Postal Service.

### 2. *Plaintiffs' Failure To Comply With 39 C.F.R. § 912.7 Does Not Bar Their Civil Action Against The Postal Service*

 The question presented by the Postal Service's motion for summary judgment, whether federal agencies can require tort claimants to provide documents and information supporting their claim as a prerequisite for a civil action, has been clearly and emphatically answered by the Ninth Circuit Court of Appeals in *Avery v. United States,* 680 F.2d 608 (9th Cir.1982) and *Warren v. United States,* 724 F.2d 776 (9th Cir.1984) (en banc). Although the *Avery* and *Warren* cases dealt with regulations promulgated by the Attorney General pursuant to 28 U.S.C. § 2672, their holdings have been applied to the regulations promulgated by the Postal Service. *See Bond v. United States,* 934 F.Supp. 351, 354 n. 6 (C.D.Cal.1996).

In *Avery* and *Warren,* the Ninth Circuit followed the landmark decision of the Fifth Circuit Court of Appeals in *Adams v.. United States,* 615 F.2d 284 (5th Cir.), *on rehearing,* 622 F.2d 197 (5th Cir.1980).[10] In *Adams,* the

---

**9.** Although claimants are not expressly required by 39 C.F.R. § 912.7(b) to provide information regarding preexisting conditions, such information may be requested pursuant to 39 C.F.R. § 912.7(b)(6).

**10.** The majority of the federal circuits have followed *Adams. See, e.g., G.A.F. Corp. v. United States,* 818 F.2d 901 (D.C.Cir.1987); *Charlton v.*

*United States,* 743 F.2d 557 (7th Cir.1984); *Tucker v. United States Postal Service,* 676 F.2d 954 (3rd Cir.1982); *Douglas v. United States,* 658 F.2d 445 (6th Cir.1981); and *Johnson v. United States,* 788 F.2d 845 (2d Cir.1986). Only the First and Eighth Circuits still hold the minority view. *See Swift v. United States,* 614 F.2d 812 (1st Cir.1980) and *Lunsford v. United States,* 570 F.2d 221 (8th Cir.1977).

plaintiffs filed a claim with the U.S. Air Force asserting that the negligence of doctors at Eglin Air Force Base caused their son's serious injuries. *Id.* at 285. The plaintiffs contended that the doctors gave Mrs. Adams inadequate prenatal treatment and were negligent during the birth procedure. *Id.* The plaintiffs submitted their claim on a Standard Form 95 as required by 28 C.F.R. § 14.2. As in the present case, the claims officer for the Air Force contacted the plaintiffs' attorney shortly after the claim was filed to demand that information responsive to 28 C.F.R. § 14.4(b)[11] be provided so that the claim could be evaluated. *Id.* The plaintiffs' attorney refused to provide the information but promised to transmit relevant medical records to the claims officer. *Id.* at 286. The claims officer was also provided with authorizations for medical records. *Id.*

The plaintiffs' attorney and the claims officer exchanged letters for several months regarding the adequacy of the information provided. *Id.* The claims officer warned that noncompliance with 28 U.S.C. § 14.4(b) could "result in a denial of your claim ... and prejudice your rights to proceed in federal court." *Id.* After the six-month period had passed without any resolution of the plaintiffs' administrative claim, they filed suit in federal court. *Id.* The Air Force brought a motion to dismiss the complaint on the ground that the court lacked jurisdiction because the plaintiffs' failed to exhaust their administrative remedies. *Id.* The motion was granted. *Id.*

The court of appeals reversed the granting of dismissal and rejected the argument of the government that failure to comply with 28 C.F.R. § 14.4(b) had jurisdictional consequences:

> The argument of the Air Force fails for two reasons. First, it erroneously assumes that the notice requirements of 28 U.S.C. § 2675 must be read in light of the settlement procedures established by 28 C.F.R. §§ 14.1–14.11, which were promulgated pursuant to section 2672. Such a

reading clearly contravenes congressional intent. The question whether a plaintiff has presented the requisite section 2675 notice is determined without reference to whether that plaintiff has complied with all settlement related requests for information. Second, even assuming that the Air Force correctly contends that section 2675 must be construed in light of section 2672 and 28 C.F.R. §§ 14.1–14.11, the Adams would not be barred from bringing their claim in federal court. To the extent that those regulations attempt to define section 2675 notice, they do so in section 14.2. The parties agree, however, that section 14.2 has been satisfied; the Adams have merely failed to comply with section 14.4(b). On either basis, therefore, the Air Force's position must be rejected.

*Id.* at 288. The *Adams* court then held that a claimant satisfies the "claims presentation" requirements of 28 U.S.C. § 2675(a) if he "(1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate and (2) places a value on his or her claim." *Id.* at 289. "This information alone allows the claimant to maintain a subsequent action in the district court following the denial of his or her claim by the agency or the passage of six months." *Id.* at 289–90.

Two years after the *Adams* decision, the Ninth Circuit Court of Appeals adopted the Fifth Circuit's approach in *Avery v. United States*, 680 F.2d 608, 610 (9th Cir.1982).[12] The *Avery* opinion dealt with two separate suits, one against the Navy and the other against the Air Force, wherein the trial courts held that the plaintiffs failed to provide sufficient information to support their administrative claims and dismissed the lawsuits. *Id.* at 609–10. In the first case, the attorney representing Avery refused to produce any medical records to the Navy because of Avery's "uncertain medical condition." *Id.* at 609. In the second case, the plaintiff Abel Rocha failed to provide the Air Force with any medical records until after his claim was denied because his insurance carrier did not respond to requests to return

---

**11.** As indicated above, 28 C.F.R. § 14.4(b) is identical to the subject Postal Service regulation, 39 C.F.R. § 912.7(b).

**12.** The *Avery* court also expressly rejected the contrary holding of the First Circuit in *Swift v. United States*, 614 F.2d 812 (1st Cir.1980).

said records. *Id.* at 610. In dismissing the lawsuits, the district courts relied on *Rothman v. United States,* 434 F.Supp. 13, 17 (C.D.Cal.1977) and *Kornbluth v. Savannah,* 398 F.Supp. 1266 (E.D.N.Y.1975), cases cited by the Postal Service herein.

The *Avery* court reviewed the legislative history for 28 U.S.C. § 2675(a) and concurred with the *Adams* court that Congress simply intended to require claimants to give notice of their claims, not prove them. The court explained:

> Section 2675(a) was not intended to allow an agency to insist on proof of a claim to its satisfaction before the claimant becomes entitled to a day in court. To so hold would permit federal defendants to be judge in their own cause by the initial determination of a claim's insufficiency. The result would not be consistent with the congressional purpose of "providing for more fair and equitable treatment of private individuals and claimants when they deal with the Government." S.Rep. at 2; [1966] U.S.C.A.N. at 2515–16.

*Id.* at 611. The *Avery* court also specifically rejected "the argument that a claimant must comply with the regulations in section 14.4 [28 C.F.R.] to meet the jurisdictional requirement of 'presenting a claim.'" *Id.* Finally, the *Avery* court held that "where a claimant gives notice of the manner and general circumstances of injury and the harm suffered, and a sum certain representing damages, *he has complied with section 2675(a).*" *Id.* (emphasis added).

In *Warren v. United States,* 724 F.2d 776, 780 (9th Cir.1984) (en banc), the court held that a claimant's failure to comply with *any* regulation promulgated by the Attorney General, 28 C.F.R. §§ 14.1–14.11, pursuant to congressional authority set forth in 28 U.S.C. § 2672, cannot be used to deny him jurisdiction if he has otherwise complied with 28 U.S.C. § 2675(a). In *Warren,* the district court dismissed the plaintiffs' wrongful death

action because their attorney, Robert J. Peyton, failed to submit evidence to prove he had authority to represent the family of the decedent, which resulted in a violation of 28 C.F.R. § 14.3(e).[13] *Id.* at 777. In explaining its holding, the *Warren* court said:

> Congress intended the requirements of section 2675 to function independently of section 2672. *Adams,* 615 F.2d at 290. Section 2675 was amended to give agencies sufficient notice to enable them to begin their own investigations. S.Rep. at 4; *Adams,* 615 F.2d at 290. *Minimal notice requires claimants to (1) give an agency sufficient written notice to commence investigation and (2) place a value on the claim. Avery,* 680 F.2d at 610. By denying appellants' claims on the merits, the BLM [Bureau of Land Management] demonstrated that they had sufficient notice to initiate investigation. The agency's actions are persuasive evidence that the jurisdictional requirement of minimal notice was satisfied... [¶] *This is not to say, however, that regulations promulgated pursuant to section 2672 are rendered meaningless by our holding that they are not jurisdictional requirements under section 2675(a).*

*Id.* at 779–80 (emphasis added).

### 3. *The Postal Regulations Are Not Distinguishable From The Regulations Analyzed In Avery And Warren*

The Postal Service argues that the Ninth Circuit decisions in *Avery* and *Warren* are distinguishable from this case because the regulations at issue in those cases, 28 C.F.R. §§ 14.2 and 14.3, were promulgated by the Attorney General pursuant to the delegation of authority in 28 U.S.C. § 2672, which relates to the settlement of claims, whereas "the FTCA authority listed for 39 C.F.R. Part 912 is 28 U.S.C. §§ 2671–2680 (which includes the presentment requirement, codified at 28 U.S.C. § 2675(a))." *Defendant's Memo, 9:26–10:3.*[14] The Postal Service's argument is without merit.

---

**13.** 28 C.F.R. § 14.3(e), which has since been repealed, provided that: "A claim presented by an agent or legal representative shall be presented in the name of the claimant, be signed by the agent or legal representative, show the title or legal capacity of the person signing, and be ac-

companied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative."

**14.** The Court has reviewed 39 C.F.R. Part 912 and confirmed that it does purport to have been

First, the Postal Service's reliance on *any* provision in the Federal Tort Claims Act as authority for 39 C.F.R. §§ 912.7(b) and 912.8 is seriously misplaced. The Postal Service advises that the regulations in 39 C.F.R. Part 912 were promulgated under the authority delegated by Congress in 28 U.S.C. §§ 2671–2680, but the only provision in the Federal Tort Claims Act which authorizes the promulgation of agency regulations is 28 U.S.C. § 2672. *See Byrne v. United States,* 804 F.Supp. 577, 581 (S.D.N.Y.1992) ("Numerous Courts of Appeal that have decided the issue have determined that the regulations in 28 C.F.R. § 14 do not apply to the notice requirement [in section 2675(a)]. . . . indeed, section 2675 makes no provision for the promulgation of regulations under its authority."). Furthermore, 28 U.S.C. § 2672 grants such authority *only* to the Attorney General. Therefore, the Court rejects the contention that 39 C.F.R. § 912.7(b) and 912.8 were duly promulgated to clarify or implement the requirements for claim presentation in 28 U.S.C. § 2675(a).[15]

■ Second, the argument presented by the Postal Service ignores the fact that Ninth Circuit Court of Appeals expressly held that "section 2675(a) requires the claimant or his legal representative to file (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim." *Warren,* 724 F.2d at 780 (citing *Adams,* 615 F.2d at 292 and *Avery,* 680 F.2d at 611). The obvious corollary to the Ninth Circuit rule is that any agency regulation which purports to impose additional requirements on claimants and their legal representatives is inconsistent with section 2675(a) and will not be given effect. *See Bond,* 934 F.Supp. at 357. Therefore, to the extent that the regulations at issue in this case, 39 C.F.R. § 912.7(b) and 912.8, purport to require claimants to provide detailed information regarding their injuries and their damages claims, they cannot be given effect here.[16]

### 4. *Plaintiffs Provided The Postal Service With The Required Minimal Notice*

■ Plaintiffs have clearly met their obligation to provide the Postal Service with the minimal notice to allow an investigation to commence. The original claim filed on Ms. Pagel's behalf by Mr. Tobin on November 20, 1995 provided the date, time and location of her trip-and-fall accident. Ms. Pagel even explained that she fell because of the "uneven surface of the walkway heading to the parking lot." She also specified that the allegedly defective or dangerous section of sidewalk was repaired by the Postal Service on October 1, 1994. Furthermore, she identified two postal employees as witnesses to the incident. Finally, she informed the Postal Service about the nature of her claimed injuries and attached her medical records from September 27, 1994 through July 28, 1995.

Thereafter, Ms. Pagel was requested to provide additional information regarding her claim and, in most cases, she complied.[17] First, she was asked to specify her damages

---

promulgated under the authority of 28 U .S.C. §§ 2671–80. The Court notes that 39 C.F.R. Part 912 also identifies 28 C.F.R. §§ 14.1 through 14.11 and 39 U.S.C. § 409 as authority.

15. The Court also rejects the Postal Service's argument, presented for the first time in its supplemental memorandum of points and authorities, that 39 C.F.R. § 912.8 should be given effect under the principle that courts should generally defer to an agency's interpretation of statutes it is authorized to administer. As explained above, Congress did not authorize the Postal Service to promulgate any regulations. Secondly, Congress did not authorize any agency, including the Justice Department, to adopt regulations clarifying, amending or affecting the claim presentation requirement set forth in 28 U.S.C. § 2675(a).

16. The Court is not declaring the regulations in 39 C.F.R. §§ 912 .7(b) and 912.8 to be invalid. The Court simply holds that claimants need not satisfy the requirements in these regulations to exhaust their administrative remedies under the Federal Tort Claims Act.

17. Ms. Pagel filed two amended claims on Standard Form 95. The first amended complaint was filed on April 2, 1996 and the second was filed on June 18, 1996. Additional information or documents relating to her personal injury claim were provided each time she filed an amended claim.

claim and she did so.[18] Later, Ms. Pagel provided the Postal Service with updated medical records and a narrative medical report prepared by Dr. John Fortune on March 1, 1996. Furthermore, the Postal Service was provided with itemized billing statements. Finally, Mr. Hawkins provided Ms. Yacap with photocopies of photographs of the walkway taken by Plaintiffs or their agents prior to its repair on October 1, 1994.

During the entire claims process, Ms. Yacap insisted that Plaintiffs and their attorneys provide the detailed information required by 39 C.F.R. § 912.7(b). Because Plaintiffs failed to provide the information, Ms. Yacap declared that she had insufficient information to properly evaluate their claims and, on that basis, denied their claims on October 23, 1996. The information required by 39 C.F.R. § 912.7(b), however, is the same as the information required by the United States in the *Adams* and *Avery* decisions.[19] Thus, it is clear that the Postal Service was not authorized to demand the information. As the *Adams* court explained:

> A claimant will ordinarily comply with 28 C.F.R. §§ 14.1–14.11 if he or she wishes to settle his or her claim with the appropriate agency. These requirements go far beyond the notice requirement of section 2675. Equating these two very different sets of requirements leads to the erroneous conclusion that claimants *must* settle with the relevant federal agency, if the agency so desires, and *must* provide that agency with any and all information requested in order to preserve their right to

sue. This conclusion is not supported by relevant legislative history.
*Adams*, 615 F.2d at 290.[20]

## IV. CONCLUSION

For the reasons set forth above, the Court finds that Plaintiffs have adequately exhausted their administrative remedies under the Federal Tort Claims Act. Accordingly, Defendant's motions for summary judgment are denied.

IT IS SO ORDERED.

---

18. Defendant vehemently argues that Plaintiffs' damages claims are insufficient because they have not provided documents or other information to support the amounts demanded ($1,500,-000.00 for Ms. Pagel and $500,000.00 for Mr. Pagel). The relevant case law, however, does not require claimants to prove their damages. It merely requires that they make a damages claim in a sum certain. *Warren*, 724 F.2d at 780.

19. Defendant makes the specious argument that 39 C.F.R. § 912.7 is distinguishable from 28 C.F.R. § 14.4 because the former was purportedly promulgated under the authority of 28 U.S.C. § 2671–2680, *which includes § 2675*, while the latter was promulgated pursuant to 28 U.S.C.

§ 2672 only. Defendant's contention is incorrect for two reasons. First, Congress only delegated authority to promulgate *any* regulations in 28 U.S.C. § 2672. Second, 39 C.F.R. § 912.7 is obviously borrowed verbatim from 28 C.F.R. § 14.4, and not independently promulgated, because Congress only gave authority to the Attorney General to make regulations.

20. The *Adams* court also aptly noted that: "In promulgating section 2675, Congress, therefore, did not seek to allow federal agencies unilaterally to shift the burden of investigation to private claimants while retaining only the responsibility of evaluating the information supplied by the claimant." *Id.* at 290 n. 9.