# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———————

No. 09-1025

———————

Nancy Mader, Personal Representative   *
of the Estate of Robert Mader   *
  *
     Appellant,   *
  *   Appeal from the United States
    v.   *   District Court for the
  *   District of Nebraska.
United States of America,   *
  *
     Appellee.   *

———————

Submitted: October 22, 2009
Filed:  August 31, 2010

———————

Before BYE, BEAM and SHEPHERD, Circuit Judges.

———————

BYE, Circuit Judge.

Nancy Mader sued the United States under the Federal Tort Claims Act, alleging the Department of Veterans Affairs (VA) acted negligently in providing medical treatment to her late husband, Robert Mader.  The district court granted the government's motion to dismiss for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), holding Mader's failure to provide the VA with proof of her status as the legal representative of her husband's estate, as well as proof of Mader's attorney's authority to bring a claim on her behalf, precluded jurisdiction.  We conclude a plaintiff meets the Act's jurisdictional prerequisites when she provides the relevant agency with "(1) sufficient information for the agency to investigate the claims . . .

and (2) the amount of damages sought." Farmers State Sav. Bank v. Farmers Home Admin., 866 F.2d 276, 277 (8th Cir. 1989). Because Mader met these requirements, we reverse and remand.

I

Robert Mader received medical care at the Veterans Affairs Medical Center in Lincoln, Nebraska. On or about May 28, 2004, a physician instructed Mr. Mader to taper off his previously prescribed medicine of Paxil by taking half a tablet daily for one week and then stopping entirely. Mr. Mader was then instructed to begin taking Seroquel. Mr. Mader followed these instructions. On or about August 3, 2004, Mr. Mader died due to a self-inflicted gunshot wound to the head.

Nancy Mader[1] first sought an administrative remedy, filing a complaint with the VA, alleging negligence in the VA's medical care of her husband. After receiving the complaint, the VA requested proof of Mader's status as the legal representative of her husband's estate, as well as proof of Mader's attorney's authority to bring a claim on her behalf. Neither Mader nor her attorney responded to this request. The VA denied Mader's administrative claim on both procedural and substantive grounds. First, the VA found that Mader, by failing to submit the requested agency information, had failed to perfect a claim. Second, and in the alternative, the VA found that even if Mader had submitted a valid claim, no negligence occurred in the care of Robert Mader.

Nancy Mader filed suit in district court under the Federal Tort Claims Act. The United States brought a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1). The district court granted the government's motion, holding that Mader, by failing to answer the VA's request for information, had failed to satisfy the

_____

[1]This opinion will alternatively refer to Nancy Mader as simply "Mader." All references to Robert Mader will include his full name.

-2-

jurisdictional prerequisites to bringing an action in federal court. Accordingly, the district court dismissed Mader's complaint without prejudice. Mader appeals the dismissal of her case.

II

This court reviews the district court's subject matter jurisdiction de novo. See Keene Corp. v. Cass, 908 F.2d 293, 296 (8th Cir. 1990).

The United States enjoys sovereign immunity except to the extent it has consented to be sued. United States v. Sherwood, 312 U.S. 584, 586 (1941); Iowa Pub. Serv. Co. v. Iowa State Commerce Com'n, 407 F.2d 916, 920 (8th Cir. 1969). A corollary to the immunity doctrine is the rule that the United States may define the conditions under which actions are permitted against it. Peterson v. United States, 428 F.2d 368, 369 (8th Cir. 1970).

The condition at issue here is the requirement found at 28 U.S.C. § 2675(a) that a claim be properly presented to the appropriate federal agency and denied before an action can be brought in federal district court. This court has held that the administrative exhaustion requirement of 28 U.S.C. § 2675(a) is jurisdictional, Melo v. United States, 505 F.2d 1026, 1028 (8th Cir. 1974); Meeker v. United States, 435 F.2d 1219, 1220 (8th Cir. 1970), and thus, it cannot be waived.

Section 2675(a) states, in relevant part: "An action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency . . . ." The statute is silent on the meaning of the phrase "presented the claim."

The relevant legislative history described the administrative exhaustion requirement as:

-3-

intended to ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States. In accomplishing these purposes, the more expeditious procedures provided by this bill will have the effect of reducing the number of pending claims which may become stale because of the extended time required for their consideration. The committee observes that the improvements contemplated by the bill would not only benefit private litigants, but would also be beneficial to the courts, the agencies, and the Department of Justice itself.

S. Rep. No. 89-1327 (1966), as reprinted in 1966 U.S.C.C.A.N 2515, 2516.

The Department of Justice has promulgated regulations governing the presentment process which the government contends govern the sufficiency of notice for jurisdictional purposes. The relevant regulation, 28 C.F.R. § 14.2, states, in relevant part:

a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident; and the title or legal capacity of the person signing, and is accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative.

28 C.F.R. § 14.2(a).

There is a split of authority among courts regarding the scope of the jurisdictional prerequisites necessary to hear claims brought pursuant to the Federal Tort Claims Act. The majority of courts have held that a plaintiff must give the applicable agency "minimal notice," which includes (1) a written statement

sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum-certain damages claim. See, e.g., GAF Corp. v. United States, 818 F.2d 901, 919 (D.C. Cir. 1987). A minority of courts have imposed a more stringent standard, holding that a plaintiff must comply with each of the regulatory requirements found in 28 C.F.R. § 14.2, which include evidence of "the title or legal capacity of the person signing . . . accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative." See, e.g., Kanar v. United States, 118 F.3d 527, 528-29 (7th Cir. 1997).

The leading case for the majority position is GAF Corp. There, the D.C. Circuit examined the statutory text, structure of the statute, and legislative history before concluding that Congress did not authorize the Department of Justice to create jurisdictional hurdles above and beyond those created explicitly by statute. GAF Corp., 818 F.2d at 919 ("[I]t is apparent that the presentment requirement imposes on claimants a burden of notice, not substantiation, of claims."). In support of this position, the GAF Corp. court noted that while Congress gave executive agencies the authority to promulgate regulations regulating the claims settlement process, see 28 U.S.C. § 2672, executive agencies were given no authority by Congress to set the jurisdictional hurdles to bringing an action in federal court. Thus, according to the GAF Corp. court, while the regulations defining the presentation of a claim are valid insofar as the regulations dictate what a plaintiff must submit before the government will consider entering into a settlement, the regulations are invalid insofar as they purport to alter the Federal Tort Claims Act's jurisdictional requirements. GAF Corp., 818 F.2d at 919. The majority position has been adopted in the Ninth Circuit, see Warren v. United States Dep't of Interior Bureau of Land Mgmt., 724 F.2d 776, 780 (9th Cir. 1984) (en banc), the Third Circuit, see Tucker v. United States Postal Serv., 676 F.2d 954, 959 (3d Cir.1982), the Fifth Circuit, see Adams v. United States, 615 F.2d 284, 289 (5th Cir. ) clarified, reh'g denied, 622 F.2d 197 (5th Cir. 1980), the

Sixth Circuit, see Douglas v. United States, 658 F.2d 445, 447 (6th Cir. 1981), and the Eleventh Circuit, see Bush v. United States, 703 F.2d 491, 494 (11th Cir. 1983).

The leading case for the minority position is Kanar. There, the Seventh Circuit held 28 C.F.R. § 14.2 does indeed supply the definition of presenting a claim for jurisdictional purposes. Kanar, 118 F.3d at 529. According to the Seventh Circuit, GAF Corp. and other courts read Congress' grant of authority too narrowly, "cover[ing] only the means of claims-processing, and not the identification of 'claims' in the first place." Id. Indeed, according to the Kanar court, the process of settling claims is inextricable from the presentation of claims itself; a poorly presented claim cannot realistically be settled. Therefore, the statutory grant of authority, according to the Kanar court, is broad enough to cover setting the terms for the presentation of claims. Id.

The Eighth Circuit is commonly cited in other circuits as an example of a court having adopted the minority position. See, e.g., Kanar, 118 F.3d at 529. However, a review of the two apposite Eighth Circuit cases leaves this court's established position far from clear. In short, while Lunsford v. United States, 570 F.2d 221 (8th Cir. 1977), arguably holds that following the regulatory requirements for presenting a claim is a jurisdictional prerequisite to filing a suit under the Federal Tort Claims Act, Farmers State Savings Bank v. Farmers Home Administration, 866 F.2d 276 (8th Cir. 1989), adopts the "minimal notice" rule accepted by the majority of our sister circuits.

In Lunsford, a group of plaintiffs attempted to bring a class action lawsuit against the federal government under the Federal Tort Claims Act. Lunsford, 570 F.2d at 222. Although five of the named plaintiffs first presented claims to the Bureau of Reclamation, the named plaintiffs attempted to file suit on behalf of a substantial class of unnamed, similarly-situated plaintiffs. Id. The district court dismissed the case for lack of jurisdiction with respect to the unnamed plaintiffs,

reasoning that they had never presented a claim to the appropriate administrative agency.  Id.  This court affirmed, citing three reasons why the district court lacked jurisdiction:  (1) the named plaintiffs never attempt to present claims on behalf of unnamed class members to the Bureau of Reclamation, (2) the named plaintiffs failed to state a sum certain with respect to the class claims, and (3) the named plaintiffs failed to establish authority to act as agents and present claims on behalf of unnamed class members.  Id. at 225-27.

In Farmers State Savings Bank, the plaintiff alleged Farmers Home Administration, an executive agency, failed to make a promised loan, which resulted in monetary loss to the plaintiff.  Farmers State Sav. Bank, 866 F.2d at 276.  Prior to filing suit, the plaintiff sent a series of letters to the Farmers Home Administration detailing its grievance and seeking a settlement.  Id.  Unable to settle the matter, the plaintiff filed suit under the Federal Tort Claims Act.  The district court dismissed the case for lack of jurisdiction, and this court reversed and remanded.  Id. at 277.  In contrast to Lunsford, the Farmers court held that "a claimant satisfies the notice requirement of section 2675 if he provides in writing (1) sufficient information for the agency to investigate the claims. . . and (2) the amount of damages sought."  Id. (citations omitted).

Putting aside momentarily Eighth Circuit precedent, it is evident the majority of our sister circuits have reached the more persuasive result in holding that the presentation of a claim, as contemplated by section 2675, requires nothing more than sufficient information for the agency to investigate the claims and the amount of damages sought.  This comports with the natural and ordinary meaning of presenting a claim.  With respect to the regulations promulgated by the Department of Justice, we agree 28 U.S.C. § 2672 does not delegate the authority to set the jurisdictional requirements of a Federal Tort Claims Act suit; rather, Congress merely authorized

the Department of Justice to promulgate rules regulating the settlement of potential claims.[2]

Further, the Eighth's Circuit's position is unsettled. Plainly, the <u>Lunsford</u> court was of the opinion that the claim presentation rules found in 28 C.F.R. § 14.2 are jurisdictional; otherwise, the court would not have cited the absence of proof of an agency relationship on its way to affirming the dismissal of the plaintiffs' class action suit. However, the <u>Lunsford</u> court never justified its position that complying with the Department of Justice's regulations is mandatory; rather the court asserted the point with no discussion. Finally, it is worth noting that the <u>Lunsford</u> court's primary holding–class action suits are not cognizable under the Federal Tort Claims Act–is not contingent on a threshold determination that plaintiffs must follow all of the requirements in 28 C.F.R. § 14.2. Indeed, two of the <u>Lunsford</u> court's reasons for rejecting the suit–the named plaintiffs' failure to present claims on behalf of unnamed class members and failure to state a sum certain with respect to the class claims–are valid reasons for rejecting class action suits even under the less-stringent jurisdictional standard adopted by the majority of other circuits. <u>See, e.g.</u>, <u>Caidin v. United States</u>, 564 F.2d 284, 286 (9th Cir. 1977).

The same flaws in the <u>Lunsford</u> opinion are evident in <u>Farmers State Savings Bank</u>. Similar to <u>Lunsford</u>, the <u>Farmers</u> court adopted the minimal notice standard

_____

[2]The dissent would conclude that compliance with the regulatory requirements found in 28 C.F.R. § 14.2 is a mandatory prerequisite to jurisdiction. But the dissent's assertion that "today's holding impedes the expeditious and fair settlement of FTCA claims" misses the core issue presented by this case. We cast no doubt today on the validity of 28 C.F.R. § 14.2 insofar as the rule sets out requirements plaintiffs must follow as a prerequisite to an administrative settlement. Congress clearly authorized the promulgation of rules for this purpose. <u>See</u> 28 U.S.C. § 2672. However, nowhere in 28 U.S.C. § 2672 or any other statute did Congress authorize the Department of Justice to constrict the jurisdiction of the federal courts by adding jurisdictional requirements beyond what is required by section 2675(a).

without meaningful discussion. In addition, the final result in Farmers was not contingent on a resolution of the jurisdictional standard; rather, the court's conclusion–that letters sent to the appropriate executive agency are sufficient to provide the substance of a claim–would be the same under either jurisdictional standard, provided the letters included the necessary information.

In light of Lunsford and Farmers, this case presents difficulties in following the "cardinal rule in our circuit that one panel is bound by the decision of a prior panel." United States v. Betcher, 534 F.3d 820, 823-24 (8th Cir. 2008). Lunsford and Farmers each applied a materially different standard; compliance with both prior decisions appears to be logically impossible.[3] When this court has confronted intracircuit splits of authority, the court has not considered itself bound by either position; instead, this court has endeavored to determine the "better approach." See, e.g., United States v. LeBrun, 363 F.3d 715, 719 (8th Cir. 2004). But see Williams v. Nat'l Football League, Nos. 09-2247, 09-2462, 09-2249, 2009 WL 6044000, at *2-3 (Dec. 14, 2009) (Colloton, J., dissenting from denial of rehearing en banc)

_____

[3]The dissent would interpret Lunsford to "define[] what constitutes sufficient information to investigate the claim when a third party presents a claim on the claimant's behalf," thereby purporting to harmonize Lunsforth with the minimal notice standard announced in Farmers. This interpretation of Lunsford is not persuasive. At the outset, it is difficult to see how evidence of authority to bring a claim could affect the "sufficient information" prong of the minimal notice requirement, which requires nothing more than "a written statement *sufficiently describing the injury* to enable the agency to begin its own investigation." GAF Corp. v. United States, 818 F.2d 901, 919 (D.C. Cir. 1987) (emphasis added). In Lunsford, the court had no information whatsoever about the injuries of the unnamed plaintiffs. This case, by contrast, further undercuts the dissent's reasoning. Although the VA sought from Mader evidence of her authority to bring a claim, Mader's refusal to provide the information did not hinder the VA from investigating the claim on the merits and making a formal determination that no negligence occurred in the care of Robert Mader.

(pointing out that other circuits have concluded the better practice normally is to follow the earliest opinion).

Adopting the "better rule" here, we conclude a plaintiff meets the Federal Tort Claims Act's jurisdictional prerequisites when she provides the relevant agency with "(1) sufficient information for the agency to investigate the claims . . . and (2) the amount of damages sought." Farmers State Savings Bank, 866 F.2d at 277. Because it is undisputed Mader met these requirements, we conclude the district erred when it determined it lacked jurisdiction.

III

Although not addressed by the parties or the district court below or either party on appeal, Judge Beam, in his dissent, would conclude the district court lacked jurisdiction for the independent reason that Mader's claim was untimely. Although we agree with the dissent that the applicable statute of limitations is jurisdictional and therefore an appropriate subject of inquiry by this court, we conclude Mader's complaint was timely filed.

The relevant statute of limitations is contained in 28 U.S.C. § 2401(b), which provides that a Federal Tort Claims Act claim "shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues."

Nancy Mader's claim accrued on August 3, 2004, the day Robert Mader died. The VA received Mader's claim via mail on August 3, 2006. Accordingly, Mader presented her claim on August 3, 2006–two years to the day after the claim accrued.

The question presented, therefore, is whether the last day to file a claim was August 2, 2006, or August 3, 2006. That question, in turn, is largely resolved by

-10-

determining whether the date the claim accrued–August 3, 2004–counts as "day zero" or "day one" for purposes of the limitations clock. Previous opinions of this court strongly suggest that when filing a Federal Tort Claims Act claim, the date the claim accrues counts as day zero. See, e.g., Wilson ex rel. Wilson v. Gunn, 403 F.3d 524, 526 (8th Cir. 2005) ("Since Wilson's administrative claim [under the FTCA] was presented on January 28, 2002, it is time-barred if it accrued before January 28, 2000."); McDuffee v. United States, 769 F.2d 492, 494 (8th Cir. 1985) (excluding the date the action accrued when calculating the Federal Tort Claims Act statute of limitations).

Typically, calculating a statute of limitations period under federal law is done by reference to Federal Rule of Civil Procedure 6(a). See Fed. R. Civ. P. 6(a) ("The following rules apply in computing any time period specified in these rules, in any local rule or court order, or in any statute that does not specify a method of computing time."). Rule 6(a)(1)(A) directs courts as follows: "When the period is stated in days or a longer unit of time . . . exclude the day of the event that triggers the period . . . ." Although Rule 6(a) cannot expand or constrict the jurisdiction of federal courts, see Mattson v. U.S. W. Commc'ns, Inc., 967 F.2d 259, 262 (8th Cir. 1992), the rule may provide a useful "means of determining the beginning and end of a statute of limitations prescribed elsewhere in law." Bartlik v. U.S. Dept. of Labor, 62 F.3d 163, 166 (6th Cir. 1995) (en banc); cf. Union Nat'l Bank v. Lamb, 337 U.S. 38, 40-41 (1949) ("Since [Rule 6(a) ] had the concurrence of Congress, and since no contrary policy is expressed in the statute governing this review, we think that the considerations of liberality and leniency which find expression in Rule 6(a) are equally applicable to [the federal statute at issue].").

The dissent would conclude the two-year statute of limitations governing Mader's claim expired on August 2, 2006. For support, the dissent relies solely on Mattson. In Mattson, The statute of limitations required plaintiffs to bring actions under the Fair Debt Collection Practices Act "within one year from the date on which

the violation occurs."  15 U.S.C. § 1692k(d); see Mattson, 967 F.2d at 260.  The violation in Mattson occurred on November 27, 1989, and the claimant filed suit on November 27, 1990.  Mattson, 967 F.2d at 260-62.  Over a sharp dissent by Judge McMillian, id. at 262-64 (McMillian, J., dissenting), we interpreted the phrase "within one year from [the violation date]" to give the claimant 365 days beginning on the violation date to bring her action, and ultimately concluded the plaintiff's claim was untimely.  Id. at 262 (majority opinion).

We note that in the eighteen years since Mattson was decided, the case has been rejected by every appellate court that has considered adopting its holding on calculating statutes of limitations.  See American Canoe Ass'n, Inc., Sierra Club v. Attalla, 363 F.3d 1085, 1089 n. 4 (11th Cir. 2004) (noting that Mattson "appears to stand alone"); Johnson v. Riddle, 305 F.3d 1107, 1115 (10th Cir. 2002) (stating that "[a]pparently, every other circuit to have weighed in on the issue has rejected the position adopted by Mattson"); Maloy v. Phillips, 64 F.3d 607 (11th Cir. 1995) ("We . . . adopt the approach used in Mattson, save for the calculation of the days from the mailing of the collection letter.").  At least two federal courts of appeals have described the position adopted by Mattson as "frivolous."  United Mine Workers v. Dole, 870 F.2d 662, 665 (D.C.Cir. 1989); Frey v. Woodard, 748 F.2d 173, 175 (3d Cir. 1984).  In addition, we also note that the single case Mattson relied on to support its position, Rust v. Quality Car Corral, Inc., 614 F.2d 1118 (6th Cir. 1980), has subsequently been unanimously overruled by the Sixth Circuit sitting en banc.  See Bartlik v. U.S. Dept. of Labor, 62 F.3d 163, 166 (6th Cir. 1995) (en banc) (referring to Rust as "erroneous").[4]

_____

[4]See generally Teresa D. Caskey Locke, Note, Oh, What a Difference a Day Makes: Mattson v. U.S. West Communications, Inc., 62 UMKC L. Rev. 227 (1993) (criticizing Mattson for "depart[ing] from the traditional and clearly defined method of calculating time" and "add[ing] confusion to an area of the law that must be absolutely clear and certain to ensure potential litigants the full scope of their statutory rights").

Whatever the continuing vitality of <u>Mattson</u>, we decline to apply its reasoning to the statute of limitations at issue in this case. As the dissent concedes, the language of the Federal Tort Claims Act's statute of limitations differs from the limitations language contained in the Fair Debt Collection Practices Act and analyzed in <u>Mattson</u>. While the Fair Debt Collection Practices Act's statute of limitations requires filing suit "within one year from the date on which the violation occurs," 15 U.S.C. § 1692k(d), the Federal Tort Claims Act requires claimants to present their claims "within two years <u>after</u> such claim accrues." 28 U.S.C. § 2401(b) (emphasis added). The presence of the word "after" conclusively demonstrates that Congress did not intend the date the claim accrued to count as the first day of the limitations period. <u>See</u> <u>Johnson v. Meyers</u>, 54 F. 417, 417 (8th Cir. 1893) (construing a statute of limitations stating "that no appeal . . . in the circuit court of appeals . . . shall be taken or sued out except within six months after the entry of the order, judgment, or decree sought to be reviewed," and holding that "[a]s the decree sought to be reviewed here was entered May 27, 1892, the last day within the six months after its entry was November 27, 1892."). <u>See also</u> <u>Wilson</u>, 403 F.3d at 526; <u>McDuffee</u>, 769 F.2d at 494.[5] We therefore conclude that Mader's claim was timely filed.

---

[5]The dissent's interpretation of the statute would also lead to potentially absurd results. Consider a hypothetical statute–identical to the Federal Tort Claims Act statute of limitations except for the length of time involved–requiring a claimant to take action "within one day after such claim accrues." The dissent would necessarily interpret the phrase "one day after such claim accrues" to mean the same day the claim accrued. Such a reading confounds common sense.

Of course, such one-day periods of limitations are common across many areas of law. Consider 18 U.S.C. § 922, the familiar federal statute criminalizing firearm possession in a number of different circumstances. Section 922(s)(1)(A)(i)(III) provides:

> Beginning on the date that is 90 days after the date of enactment of this subsection and ending on the day before the date that is 60 months after such date of enactment, it shall be unlawful for any licensed importer,

-13-

licensed manufacturer, or licensed dealer to sell, deliver, or transfer a handgun . . . to an individual who is not licensed under section 923, unless . . . the transferor has . . . <u>within 1 day after</u> the transferee furnishes the statement, provided notice of the contents of the statement to the chief law enforcement officer of the place of residence of the transferee . . . .

18 U.S.C. § 922(s)(1)(A)(i)(III) (emphasis added). The rules governing the procedures of the National Labor Relations Board contain a similar one-day period of limitations. Those rules provide that "[w]ithin one day after a vote to close a meeting . . . the agency shall make publicly available a full written explanation of its action closing the meeting . . . ." 29 C.F.R. § 102.141 (emphasis added). Similarly, the rules governing the procedures of the Federal Trade Commission state that, in the course of filing an interlocutory appeal, "[t]he party [seeking review] may file an application for review with the Commission <u>within 1 day after</u> notice that the Administrative Law Judge has issued the requested determination . . . . 16 C.F.R. § 3.23 (emphasis added). Section 3553(b)(1) of Competition in Contracting Act of 1984 requires the Government Accountability Office to notify the "Federal agency involved" "[w]ithin one day after the receipt of a protest." 31 U.S.C. § 3553(b)(1) (emphasis added). <u>See also</u> Conn. Gen. Stat. § 9-445 (under Connecticut election law, "there shall be a recanvass of the returns of the voting machine . . . unless <u>within one day after</u> the primary. . . the defeated candidate . . . file[s] a written statement waiving this right to such recanvass") (emphasis added); Ala. Code § 35-11-371 ("[A] claimant shall also <u>within one day after</u> the filing of such claim or lien, mail a copy thereof by registered or certified mail, postage prepaid, for each person, firm or corporation so claimed to be liable on account of such injuries . . . .") (emphasis added); Minn. R. Civ. P. 63.03 (1984) ("he affidavit shall be served and filed . . . in any district having two or more judges, <u>within one day after</u> it is ascertained which judge is to preside at the trial or hearing.") (emphasis added); Or. Rev. Stat. § 652.140 ("When an employer discharges an employee or when employment is terminated by mutual agreement, all wages earned and unpaid at the time of the discharge or termination become due and payable not later than the end of the first business day after the discharge or termination.") (emphasis added); N.Y. Real Prop. Acts. Law § 735 ("[S]ervice of the notice of petition and petition shall be made by personally delivering them to the respondent . . . and in addition, <u>within one day after</u> such delivering to such suitable person or such affixing or placement, by mailing to the

IV

Reversed and remanded.

BEAM, Circuit Judge, dissenting.

Because I would affirm the district court's correct conclusion that Personal Representative Nancy Mader (Mader) is jurisdictionally barred from advancing her FTCA claim, I respectfully dissent.

In its quest to formulate a result that the panel majority apparently finds more favorable to its exotic legal and policy notions, the court summarily rejects clearly established law and precedent applicable to three issues presented. Specifically, the majority rejects two instances of binding Eighth Circuit precedent and, in addition, snubs clearly formulated Nebraska law as established by legislative mandate and Nebraska Supreme Court opinion. With this approach, I disagree.

I.

First and foremost, the court very reluctantly and incorrectly, addresses whether Mader timely presented her FTCA claim. "Federal subject matter jurisdiction . . . must be raised *sua sponte* by a federal court when there is an indication that jurisdiction is lacking." Alumax Mill Prods., Inc. v. Congress Fin. Corp., 912 F.2d

---

respondent both by registered or certified mail and by regular first class mail . . . .) (emphasis added).

If adopted, the reasoning of the dissent would compel the conclusion that the action required by each of these and other similar laws be accomplished the same day as the triggering event, possibly within mere minutes of the triggering event. But the plain language of the laws quoted above simply does not tolerate such a counterintuitive construction.

-15-

996, 1002 (8th Cir. 1990) (quotation omitted). Because Mader's compliance with the FTCA's statute of limitations is a jurisdictional prerequisite to bringing a suit against the United States, T.L. ex rel. Ingram v. United States, 443 F.3d 956, 961 (8th Cir. 2006), and there is a question as to whether Mader timely presented her claim, we must begin, not end, with this issue.

28 U.S.C. § 2401(b) provides that an FTCA claim "shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues." An FTCA claim accrues when "the plaintiff knows or reasonably should know both the existence and cause of the injury." Slaaten v. United States, 990 F.2d 1038, 1041 (8th Cir. 1993). In death cases, "it is fair for the claim to accrue at the time of death." Clifford ex rel. Clifford v. United States, 738 F.2d 977, 980 (8th Cir. 1984). Here, Mr. Mader's death certificate reports that he died at 11:00 p.m. on August 3, 2004, immediately following a self-inflicted gunshot to the head.[6] Thus, Mader's claim accrued on August 3, 2004.

Next, an FTCA claim is "presented" when the appropriate federal agency receives the claim, not when it is mailed. See 28 C.F.R. § 14.2(a); Drazan v. United States, 762 F.2d 56, 58 (7th Cir. 1985) ("[M]ailing [an FTCA claim] is not presenting; there must be receipt."). The record reveals that Mader's attorney mailed a Standard Form 95, Claim for Damage, Injury, or Death to the Department of Veteran Affairs (VA) via overnight mail on August 2, 2006, and the VA received the form on August 3, 2006. Accordingly, Mader purports to have "presented" her alleged claim on August 3, 2006.

Thus, Mader's claim accrued on August 3, 2004, if she timely became the personal representative (PR) of Mr. Mader's estate, and was presented on August 3, 2006, if she remained the PR on that date. This raises the question of whether the

---

[6]Mader's Standard Form 95, Claim for Damage, Injury, or Death similarly asserts that Mr. Mader committed suicide on August 3, 2004.

-16-

final allowable day to present Mader's claim under § 2401(b) was (1) August 2, 2006–i.e., two "calendar years" from the date of Mr. Mader's death; or (2) August 3, 2006–i.e., the "anniversary date" of Mr. Mader's death.[7] If the calendar-year method of computation applies, Mader presented her claim one day late; if the anniversary method applies, Mader timely presented her claim on the anniversary date of Mr. Mader's death.

Several of our sister circuits have applied Federal Rule of Civil Procedure 6(a), which embodies the anniversary method, to calculate § 2401(b)'s limitation periods. See, e.g., Maahs v. United States, 840 F.2d 863, 866-67 (11th Cir. 1988); Hart v. United States, 817 F.2d 78, 80 (9th Cir. 1987) (per curiam); Frey v. Woodard, 748 F.2d 173, 175 (3d Cir. 1984). But, this circuit does not apply the Rule 6(a) anniversary date to compute jurisdictional statutes of limitations, it uses the calendar-year method. See Mattson v. U.S. W. Commc'ns, Inc., 967 F.2d 259, 262 (8th Cir. 1992). Given that § 2401(b) is a jurisdictional statute of limitations, T.L. ex rel. Ingram, 443 F.3d at 961, this panel cannot apply Rule 6(a) to resolve the timeliness issue presented in this case.

Although Rule 6(a) does not apply, some still argue that the language of § 2401(b) adopts the anniversary method of calculation. See Maahs, 840 F.2d at 865-66 (discussing various possible interpretations of § 2401(b)). However, our decision in Mattson forecloses this argument. The statute of limitations at issue in Mattson required claimants to bring actions under the Fair Debt Collection Practices Act (FDCPA) "within one year from the date on which the [FDCPA] violation occurs." 15 U.S.C. § 1692k(d); see Mattson, 967 F.2d at 260. There, the FDCPA violation

---

[7]The calendar-year method counts the accrual date as the first day of computation whereas the anniversary method counts the day following the accrual date as the first day of computation. See United States v. Marcello, 212 F.3d 1005, 1008-10 (7th Cir. 2000) (discussing the "calendar-year" and "anniversary" methods of calculating limitations periods).

in question occurred on November 27, 1989, and the claimant brought her action on November 27, 1990. <u>Mattson</u>, 967 F.2d at 260-62. The court interpreted the phrase "within one year from [the violation date]" to give the claimant 365 days beginning on the violation date to bring her action. <u>Id.</u> at 262. In other words, the calendar-year method was applied and the claimant was deemed to have filed her claim one day late. <u>Id.</u>

While the statute in <u>Mattson</u> required a claimant to bring her FDCPA action "within one year *from* [the violation date]," § 2401(b) required Mader to present her FTCA claim "within two years *after* such claim accrues." The only relevant difference between these phrases is § 2401(b)'s use of the term "after" instead of "from." "The words 'from' and 'after' are frequently employed as adverbs of time, and when used with reference to time are generally treated as having the same meaning." 86 C.J.S. *Time* § 17 (2006).[8] Notably, there is "some difference of opinion as to whether the words are used as inclusive or exclusive of the day or event from which the time is computed." <u>Id.</u> In <u>Mattson</u>, the court read the term "from" as inclusive of the violation date, and I see no reason to read "after" as exclusive of the accrual date specified in § 2401(b). Indeed, when the limitation is tied to the words "claim accrue[d]" as in the FTCA, an even stronger argument for <u>Mattson</u>'s relevance can be made.

Thus, because the calendar-year method of computation applies to § 2401(b)'s two-year statute of limitations, the last day for Mader to present her claim was August

---

[8]Random House Webster's Unabridged Dictionary (2d ed. 1997), provides the following relevant definitions of the words: From–"used to specify a starting point in an expression of limits," <u>id.</u> at 770; After–"later in time than," <u>id.</u> at 36. As used in sections 1692k(d) and 2401(b), the words present a distinction without a difference and to reject <u>Mattson</u>'s binding effect by seeing such a difference in the use of these two words borders on the extreme.

2, 2006. Given that Mader presented her claim on August 3, 2006, her claim is time-barred.[9]

A fair reading of the opinion for the court discloses that the panel majority actually recognizes that <u>Mattson</u> precedent controls the outcome of this case, but chooses to ignore it anyway as a matter of discretion. In this regard, the majority says "[w]e note that in the eighteen years since <u>Mattson</u> was decided, the case has been rejected by every appellate court that has considered adopting its holding on calculating statutes of limitations." <u>Ante</u> at 12. The court then further says "[w]hatever the continuing vitality of <u>Mattson</u>, we decline to apply its reasoning to the statute of limitations at issue in this case." <u>Id.</u> at 13. This attempted disconnect, of course, is not the panel majority's prerogative as dictated by even more firmly embedded binding precedent of this circuit. As former Chief Judge Lay states in his concurrence and dissent in <u>United States v. Stewart</u>, 7 F.3d 1350 (8th Cir. 1993), even if all other circuits disagree with our established precedent, it may not be disregarded by a panel of this court until it has been overruled by the court en banc. <u>Id.</u> at 1354 (Lay, J., concurring and dissenting). <u>Mattson</u> has never been overruled by an en banc court of this circuit and must be respected by the panel majority in this case.

II.

Even assuming that Mader timely presented her claim, I disagree with the court's conclusion that she fulfilled 28 U.S.C. § 2675(a)'s administrative exhaustion

---

[9]In the majority's footnote 5, it incorporates a hypothetical one-day FTCA statute of limitations in arguing that <u>Mattson</u>'s "calendar-day" method "confounds common sense." <u>Ante</u> at 13 n.5. To the contrary, it is the majority's hypothetical (which is superficial, misbegotten and wholly unconstitutional, <u>Wilson ex rel. Wilson v. Gunn</u>, 403 F.3d 524, 527 (8th Cir. 2005); <u>Fields v. Legacy Health Sys.</u>, 413 F.3d 943, 956-57 (9th Cir. 2005)), that "confounds common sense." And, so far as I know, there is no purported "confounds common sense" test (especially an unconstitutional one) that permits a panel majority to disregard long-established circuit precedent.

requirement despite failing to send the VA (1) proof of her status as personal representative of Mr. Mader's estate, or (2) proof of her attorney's status as her legal representative.  Ante at 2, 10.  Section 2675(a), a jurisdictional administrative exhaustion requirement, provides that FTCA claimants shall present their claims to the appropriate federal agency before instituting an action for damages against the United States.  The major reason for this requirement is to "'facilitate settlement of cases.'"  Lunsford v. United States, 570 F.2d 221, 226 (8th Cir. 1977) (quoting Caidin v. United States, 564 F.2d 284, 286 (9th Cir. 1977)).  Although § 2675(a) does not explain what constitutes the presentation of a claim, 28 C.F.R. § 14.2(a), an implementational rule adopted at the direction of Congress, see 28 U.S.C. § 2672, provides, in relevant part, that claims must be "accompanied by evidence of [a third party's] authority to present a claim on behalf of the claimant as agent . . . or other representative."

In Lunsford, third parties attempted to present FTCA claims to a federal agency on behalf of a class of unnamed claimants (1) without evidence of their authority to do so, and (2) without stating a sum certain as to damages.  Lunsford, 570 F.2d at 224-25.  This circuit held that the third parties "inadequately presented the claims of unnamed class members *because they failed to demonstrate the existence of the necessary agency relationship*."  Id. at 226 (emphasis added).  The court reasoned that because the purpose of § 2675(a) is to facilitate settlement of cases, evidence of the existence of one's legal authority to present a claim on behalf of the claimant is required.  Id.  Truly, without the presentation of such evidence, "'the ability of the United States to negotiate a settlement is impeded.'"  Id. (quoting Caidin, 564 F.2d at 286).  The court also held that the administrative claims were inadequately presented because they failed to state a sum certain as to damages.  Id.; see 28 C.F.R. § 14.2(a) (sum certain requirement).

Later, in Farmers State Savings Bank v. Farmers Home Administration, 866 F.2d 276, 277 (8th Cir. 1989), this circuit held that the claimant satisfied § 2675(a)'s

exhaustion requirement. There, a bank, asserting a claim on its own behalf, sent several letters to a federal agency that (1) stated in detail the events that led to its asserted claim, and (2) requested relief in the amount of $80,000. Id. at 276. The court explained that to satisfy § 2675(a), a claimant must present in writing "(1) sufficient information for the agency to investigate the claims, and (2) the amount of damages sought." Id. at 277 (internal citations omitted). The panel then clarified that "two prerequisites for administrative investigation are the identity of the claimants, see Lunsford, 570 F.2d at 226, and the nature of the claims." Id. (internal citation omitted). Because the bank identified itself, clearly detailed the basis of its claims, and specified a sum certain, the bank's letters satisfied § 2675(a). Id.

The panel majority today, by its own admission "[p]utting aside momentarily Eighth Circuit precedent" in favor of the more relaxed standards of some other circuits, ante at 7, determines that "Lunsford and Farmers each applied a materially different standard; compliance with both prior decisions appears to be logically impossible." Ante at 9. The majority acknowledges that the "cardinal rule in our circuit [is] that one panel is bound by the decision of a prior panel." United States v. Betcher, 534 F.3d 820, 823-24 (8th Cir. 2008) (quotation omitted), cert. denied, 129 S. Ct. 962 (2009). But, it claims, when faced with conflicting precedents, "[w]e are . . . free to choose which line of cases to follow." Kostelec v. State Farm Fire & Cas. Co., 64 F.3d 1220, 1228 n.8 (8th Cir. 1995). But, in this circuit, "'the better practice normally is to follow the earliest opinion, as it should have controlled the subsequent panels that created the conflict.'" United States v. Robertson, 606 F.3d 943, 949 (8th Cir. 2010) (quoting T.L. ex rel. Ingram, 443 F.3d at 960)). Here, the court disregards our earlier decision in Lunsford, concluding that Farmers encapsulates the "better rule"–i.e., when a third party attempts to present a claim to a federal agency on behalf of an FTCA claimant, she need not submit accompanying evidence of her legal authority to do so. The court's decision to disregard Lunsford is incorrect for three reasons.

-21-

First, the court erroneously treats Farmers as binding on the issue of whether a third party properly presents a claim on behalf of a claimant when the third party submits no evidence of her legal authority to do so. This issue was never raised, addressed, or resolved in Farmers because the claimant in that case presented a claim *on its own behalf*. "[W]e are generally not bound by a prior panel's implicit resolution of an issue that was neither raised by the parties nor discussed by the panel." Streu v. Dormire, 557 F.3d 960, 964 (8th Cir. 2009). In contrast to Farmers, the precise issue raised in the present case was explicitly raised, addressed, and resolved in Lunsford. Accordingly, the panel must adhere to our circuit's cardinal rule and follow Lunsford.

Next, the court erroneously concludes that it is "logically impossible" to reconcile Lunsford and Farmers. Indeed, a proper reading[10] of these cases reveals no genuine conflict. Under Farmers, a claimant satisfies § 2675(a) if she presents in writing (1) sufficient information to investigate the claim, and (2) the amount of damages sought. Farmers, 866 F.2d at 276. Lunsford simply defines what constitutes sufficient information to investigate the claim when a *third party* presents a claim on the claimant's behalf. In that context, there is insufficient information to investigate a claim where a third party fails "to demonstrate the existence of the necessary agency relationship" between herself and the claimant. Lunsford, 570 F.2d at 226. Notably, the Lunsford claimants, like Mader, argued that "technical noncompliance with the administrative regulations should not preclude recovery when the claim was sufficient to give the government notice of the claim." Id. While the Lunsford court acknowledged that other circuits applied this "minimal notice" rule, it pointed out that in each of those cases "an identifiable claimant had filed a claim for a sum certain *thus giving the government the opportunity to evaluate and settle the claim later sued upon*." Id. at 227 (emphasis added). It is not surprising then that the court found

_____

[10]Given that on its face Farmers twice approvingly cites Lunsford, see Farmers, 866 F.2d at 277, the court's conclusion that it is "logically impossible" to reconcile these cases immediately raises red flags.

-22-

§ 2675(a) satisfied in Farmers where the claimant, asserting a claim on its own behalf, was (1) identifiable, and (2) stated a sum certain. Thus, contrary to the majority's view, Farmers and Lunsford are in harmony.

Finally, even assuming that (1) Farmers is somehow binding on the precise issue presented in this case, and (2) there is a genuine conflict between Lunsford and Farmers on this issue, the court's holding does not reflect the "better rule." As discussed above, the major purpose of § 2675(a) is to facilitate settlement of cases. The circumstances surrounding this case demonstrate precisely why today's holding impedes the expeditious and fair settlement of FTCA claims.

Under 28 C.F.R. § 14.3(c), an FTCA "claim based on death may be presented by the executor or administrator of the decedent's estate, or by any other person legally entitled to assert such a claim in accordance with applicable State law." Under Nebraska law, wrongful death actions may only "be brought by and in the name of the . . . personal representative." Neb. Rev. Stat. § 30-810; see Spradlin v. Dairyland Ins. Co., 641 N.W.2d 634, 637 (Neb. 2002) ("The plain language of [§ 30-810] allows only the personal representative to bring [a wrongful death] action . . . ."). When Mader attempted to present the wrongful death claim, she asserted the legal title of "Personal Representative of the Estate of Robert L. Mader." Despite the VA's repeated requests, Mader did not provide the VA with evidence that she was in fact the personal representative of Mr. Mader's estate. It was not until the panel requested such evidence at oral argument that Mader's attorney finally submitted to this court a document entitled "Letters of Personal Representative." See Docket Entry on 11/04/2009. This document, originally filed in the County Court of Hall County, Nebraska, reports that on August 12, 2004, Mader was appointed as personal representative of Mr. Mader's estate. Id.

However, Mader still did not provide evidence that she was the personal representative on the date she attempted to present the claim to the VA. In fact, on

July 8, 2005, Mader filed a "Verified Statement" in the Hall County court informally closing Mr. Mader's estate.  <u>See</u> Docket Entry on 11/18/2009.  The Verified Statement provides:

> [T]he undersigned believes the affairs of this estate are completed and is closing the estate by the filing of this Verified Statement.  *If no proceedings involving the Personal Representative are pending in this Court one year after the filing of this Verified Statement, the appointment of the Personal Representative shall thereupon terminate.*

<u>Id.</u>  (emphasis added); <u>see</u> Neb. Rev. Stat. §§ 30-24,117(b), 30-2453(a).  There is no evidence that "proceedings involving the Personal Representative" were pending in the Hall County court one year after Mader filed this statement.  Assuming no such proceedings were pending, Mader's appointment as personal representative terminated in July 2006, <u>see</u> Neb. Rev. Stat. § 30-24,117(b), well before she attempted to present the wrongful death claim on August 3, 2006.  Importantly, under Nebraska law, termination of appointment "terminates [the personal representative's] authority to represent the estate in *any pending or future proceeding.*"  Neb. Rev. Stat. § 30-2451 (emphasis added).

Thus, on August 3, 2006, Mader had no authority to present or settle the claim she submitted to the VA.  While the rule articulated in <u>Lunsford</u> helps weed out such defective claims, the court sidesteps <u>Lunsford</u> and holds that Mader's mere assertion of personal representative status satisfies § 2675(a)'s administrative exhaustion requirement.  Allowing third parties to present FTCA claims without legal authority to do so not only ignores the letter of the law but also most definitely impedes the settlement of claims, and therefore cannot be the better approach.  In light of § 2675(a)'s underlying purpose, it is only reasonable for a federal agency to demand and receive evidence of one's legal authority to present and settle a claim before it diverts valuable time and resources to investigate the claim.  Mader's refusal to

-24-

respond to the VA's numerous and varied requests for this necessary information, requires dismissal of this FTCA claim.

III.

For the foregoing reasons, I dissent.

_____