Melvin KANAR, Plaintiff–Appellant,

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 96–3621.

United States Court of Appeals, Seventh Circuit.

Submitted June 13, 1997.

Decided June 30, 1997.

Rehearing Denied July 23, 1997.

**528**

Marcellus Long, Jr. (submitted), Hatchett, Dewalt & Hatchett, Pontiac, MI, for Plaintiff–Appellant.

Gerald A. Coraz, Office of the United States Attorney, Indianapolis, IN, for Defendants–Appellees.

Before POSNER, Chief Judge, and EASTERBROOK and MANION, Circuit Judges.

EASTERBROOK, Circuit Judge.

No one may file suit under the Federal Tort Claims Act without first making an administrative claim. 28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993). "A tort claim against the United States shall be forever barred unless it is presented to the appropriate Federal agency within two years after such claim accrues". 28 U.S.C. § 2401(b). But what is a "claim"? The statute does not say—and although it authorizes the Attorney General to promulgate regulations that agencies must follow when they "consider, ascertain, adjust, determine, compromise, and settle any claim", 28 U.S.C. § 2672 para. 1, it does not expressly authorize the Attorney General to *define* the term "claim." Treating authority to do so as implied, the Department of Justice adopted this definition:

> For purposes of the provisions of 28 U.S.C. 2401(b), 2672, and 2675, a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident; and the title or legal capacity of the person signing, and is accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative.

28 C.F.R. § 14.2(a). Under this regulation a "claim" has four elements: (i) notification of the incident; (ii) a demand for a sum certain; (iii) the title or capacity of the person signing; and (iv) evidence of this person's authority to represent the claimant. On behalf of Melvin Kanar, attorney Marcellus Long, Jr., filed a document that meets the first three elements of a "claim" but not the fourth. With three months to go in the two years, the agency told Long that it needed "evidence of [Long's] authority to present a claim on behalf of [Kanar] as agent, executor, administrator, parent, guardian, or other representative." Long ignored this request. Nine months after the two years had run, Long finally submitted a power of attorney signed by Kanar. Too late, the agency replied. The district judge dismissed the eventual suit, ruling that all four elements of a "claim" identified in § 14.2(a) must be satisfied within the two years.

To resolve Kanar's appeal we must address three issues: (i) did the document Long sent before the two-year anniversary amount to a "claim"?; if not (ii) is failure to satisfy all elements of a "claim" within two years invariably fatal?; and if not, then (iii) is Kanar's a good case for an exception? Let us start with the first.

Twice this court has held that § 14.2(a) establishes the elements of a "claim." *Best Bearings Co. v. United States*, 463 F.2d 1177, 1179 (7th Cir.1972); *Erxleben v. United States*, 668 F.2d 268, 271 (7th Cir.1981). Neither case dealt with the evidence-of-authority element, but the decision to use the regulation as the point of reference precludes selecting among its elements; then the court would not be using the regulation at all but would be supplying an independent definition of claim. One might justify an independent

choice on the ground that § 2672 does not expressly authorize the Attorney General to define the statutory word "claim", but Kanar does not ask us to reexamine *Best Bearings* and *Erxleben*. Quite the contrary, Kanar's brief ignores these cases, even though the district court cited *Best Bearings* as the lead case supporting its decision.

Kanar's decision spares us the need for a full-dress review of what has become a conflict among the circuits. At least two other circuits share our view that the regulation supplies the definition of a "claim." See *Pennsylvania v. National Association of Flood Insurers*, 520 F.2d 11, 19–20 (3rd Cir. 1975); *Lunsford v. United States*, 570 F.2d 221, 225–27 (8th Cir.1977). But at least five circuits believe that "minimal notice" makes out a statutory "claim." See *Adams v. United States*, 615 F.2d 284, 290 (5th Cir.1980); *Douglas v. United States*, 658 F.2d 445, 447–48 (6th Cir.1981); *Warren v. Department of the Interior Bureau of Land Management*, 724 F.2d 776 (9th Cir.1984) (en banc); *Cizek v. United States*, 953 F.2d 1232, 1233 (10th Cir.1992); *GAF Corp. v. United States*, 818 F.2d 901, 920 & n. 110 (D.C.Cir.1987). These courts of appeals treat as a "claim" any document that identifies the incident said to be tortious and demands a sum certain in damages. Where the sum-certain requirement comes from, if not from the regulation, is a mystery; it is not part of a claim for relief in judicial practice. Fed. R. Civ. P. 8. Section 2675(b) does say that suit is limited to "the amount of the claim presented to the federal agency", but this need not imply that a precise demand must appear in the initial administrative filing; moreover, statutory exceptions for newly discovered evidence and intervening facts suggest more flexibility than a sum-certain requirement tolerates. But let that pass. The larger question is why so many judges are willing to disregard a regulation that the Attorney General promulgated with statutory authority.

These courts' answer is not the possibility we have mentioned—that the statutory grant of authority covers only the means of claims-processing, and not the identification of "claims" in the first place. It is instead that the Federal Tort Claims Act, as a waiver of sovereign immunity, receives a strict reading, and that conditions in the FTCA must be treated as limitations on the jurisdiction of the federal courts. Because jurisdictional rules come from Congress rather than the Department of Justice, it follows (to these courts) that § 14.2(a) does not affect which suits may be brought. Some of these courts add a second reason: that the regulation did not mention § 2675. It was later amended so that the definition of "claim" applies to § 2675. None of these courts has changed its view, so we treat this as a makeweight and concentrate on the contention that a rule cannot affect "jurisdiction"—which we think does more to reveal how variegated that term can be than to show why a properly adopted regulation may be ignored.

"Jurisdiction" in its strongest sense is a case or controversy within the meaning of Article III. No one today doubts that Article III courts may entertain suits against the United States seeking money damages, although this was once doubtful given Congress' ability not to pay up. See *Williams v. United States*, 289 U.S. 553, 53 S.Ct. 751, 77 L.Ed. 1372 (1933), and *Ex parte Bakelite Corp.*, 279 U.S. 438, 49 S.Ct. 411, 73 L.Ed. 789 (1929), both of which were repudiated in *Glidden Co. v. Zdanok*, 370 U.S. 530, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962), though a majority of the Court was unable to agree on a rationale to replace them. Another, slightly weaker, sense of the term is the statutory grant of adjudicatory power. These are the two senses of jurisdiction that may not be stipulated or waived by the parties—although pendent and ancillary jurisdiction (now codified in 28 U.S.C. § 1367 as supplemental jurisdiction, but for a long time a common law development), plus the concept of "jurisdiction to determine jurisdiction", show that the requirement of a statutory grant of jurisdiction has some fuzziness at the edges. At all events, subject-matter jurisdiction over Kanar's case is secure. Section 1346(b)(1) of the Judicial Code creates jurisdiction to decide cases under the FTCA.

Law teems with weaker uses of the word. Courts need jurisdiction over the persons of the litigants, but they may waive this requirement or forfeit it by objecting belatedly.

**530**

Then there is a tendency to use "jurisdiction" to refer to the lack of a claim for relief, though cases such as *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), caution against equation of the two. Courts often use the word to denote the allocation of authority among coordinate parts of the judicial branch. See *Peretz v. United States,* 501 U.S. 923, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991). "Jurisdiction" is appropriated as a shorthand for the commerce element in many a federal statute (which may require proof that acts were in or affected interstate commerce). See *United States v. Lopez,* 514 U.S. 549, 561–62, 115 S.Ct. 1624, 1630–31, 131 L.Ed.2d 626 (1995). And in the loosest sense of all the word denotes any condition precedent to the plaintiff's ability to prevail. See generally *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393–98, 110 S.Ct. 2447, 2454–57, 110 L.Ed.2d 359 (1990); *Szabo Food Service, Inc. v. Canteen Corp.,* 823 F.2d 1073, 1077–79 (7th Cir.1987).

Only the last of these casual uses of "jurisdiction" is at issue with respect to § 2675. A litigant who wants money from the Treasury needs two things: a grant of jurisdiction, and a waiver of sovereign immunity. See *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Section 1346(b)(1) supplies the former, § 2674 para. 1 the latter. Other parts of the FTCA, including §§ 2401(b) and 2675(a), establish some limitations on the waiver of sovereign immunity in § 2674. It may be that these limitations should be rigorously enforced, but incantation of the word "jurisdiction" does not help a court determine either how strictly to enforce them or what role a regulation might play in defining a statutory term. Consider the point this way: if the "jurisdictional" nature of the issue disables the Attorney General from defining "claim" by regulation, does it not equally disable the courts? What doctrine is more firmly established than that courts may not alter the extent of their own jurisdiction? For our part, however, we treat "claim" as a statutory term that needs a definition, and we see no reason why that definition may not come from a regulation issued under statutory authority. If the definition turns out to affect which cases may be litigated, that is because the requirement of a "claim" is in the statute, not because the term has one meaning rather than another.

Conditions on the waiver of sovereign immunity might be read *strictissimi juris,* functionally equating them with jurisdictional rules, but they need not be so read. That much is clear from *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), which holds that the statute of limitations for commencing an employment-discrimination suit against the United States is potentially subject to equitable tolling and estoppel. The Court jettisoned a "jurisdictional" treatment of this statutory condition precedent to suits against the United States. In the wake of *Irwin,* we held that failure to comply with the regulations for presenting administrative claims of discrimination (which, as under the FTCA, are necessary precursors to litigation), likewise may be excused, though only for strong reasons. See *White v. Bentsen,* 31 F.3d 474 (7th Cir.1994). Perhaps administrative claims under the FTCA should be treated the same way; but perhaps the conditions attached to tort claims should be treated more like the conditions attached to claims for tax refunds. *United States v. Brockamp,* — U.S. —, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997), holds that a timely administrative claim for refund is indispensable—that equitable tolling will not be recognized, even on the assumption that after *Irwin* a timely application is not essential to "jurisdiction." Whether tort claims are more like claims of discrimination (which after *Irwin* are treated hospitably) or like claims for tax refunds (which after *Brockamp* are not generously received) is something that depends on the text and functions of the FTCA, not on the question whether the definition of a claim ought to be called "jurisdictional."

Well, then, is it possible to litigate under the FTCA following an administrative demand that does not comply with every jot and tittle of the rules defining a "claim"? Not only *Irwin* and *White* but also the practice in tax law suggest strongly that the answer is "yes"—as two courts of appeals have held after *Irwin.* See *Glarner v. U.S., Veterans Administration,* 30 F.3d 697 (6th

Cir.1994); *Schmidt v. United States*, 933 F.2d 639 (8th Cir.1991). Long before *Irwin*, the Supreme Court held that harmless noncompliance with the formalities prescribed for tax refund claims does not prevent adjudication of those claims. See *United States v. Kales*, 314 U.S. 186, 194, 62 S.Ct. 214, 218, 86 L.Ed. 132 (1941); *United States v. Memphis Cotton Oil Co.*, 288 U.S. 62, 67, 53 S.Ct. 278, 280, 77 L.Ed. 619 (1933). See also *BCS Financial Corp. v. United States*, 118 F.3d 522 (7th Cir.1997). A taxpayer must activate the refund machinery. Having done so, the taxpayer is not defeated by foibles in the refund application. If that is so even in a part of the law that does not tolerate any delay in getting the process under way (as *Brockamp* holds), why should courts stand on punctilious adherence to unimportant elements of the regulatory definition of a "claim" under the FTCA? If the noncompliance does not hinder the settlement process that a claim is supposed to initiate, why should it foreclose litigation?

"No harm, no foul" is a maxim of the law of torts (in legal rather than sports lingo: there is no tort without injury). This maxim is equally apt in administering the apparatus for seeking compensation after a tort. *Bukala v. United States*, 854 F.2d 201 (7th Cir.1988), so holds for another element of the FTCA's claims process—28 C.F.R. § 14.2(b)(1), which says that the "claim shall be presented to the Federal agency whose activities gave rise to the claim." Bukala sent the claim to the wrong agency. We nonetheless held that she could litigate, because this error should not have hampered the administrative process in light of the further provision in § 14.2(b) requiring a recipient agency to transmit the claim to the one where it should have been filed. Although the agency that received Bukala's claim did not do this, we concluded that it should have done so—28 C.F.R. § 14.2 is as much law for the agencies as it is for the claimants—and that the United States could not use its own noncompliance as a defense to liability. To the extent *Best Bearings* and *Erxleben* use a jurisdictional analogy to conclude that nothing short of a "claim" as defined in § 14.2(a) ever suffices, they have

been overtaken by *Irwin*—although their principal conclusion that § 14.2(a) defines a "claim" remains good law.

How, then, does Kanar's submission stand? Did omission of evidence that Long had authority to represent Kanar frustrate the process of conciliation and settlement that the administrative demand is supposed to initiate? An agency might have overlooked the omission and assumed that a lawyer would have a power of attorney—but this agency did not. The omission was noted, and Long was instructed to forward the necessary evidence. Had he promptly submitted what the agency called for, we would be inclined to treat his original papers as close enough to a "claim" to count. But instead of cooperating, Long balked. At this point the agency had to make a choice: proceed despite counsel's refusal to follow instructions, or close the file. It chose the latter, a reasonable response to the disdain of a reasonable request. As a result, the settlement process that Congress created as a prelude to litigation (see *McNeil*) was thwarted. Long's omission was not harmless; it scotched the process. Even during this litigation, Long has been indifferent to the law governing FTCA claims. For example, the caption appearing at the head of this opinion is not the one Long devised. Despite 28 U.S.C. § 2674, which says that the United States is the right defendant, Long named as parties the Department of Justice and the Federal Bureau of Prisons, the latter not even an agency in its own right. And Long's brief does not deal with a single one of the cases we have discussed in this opinion. After the United States relied on *Best Bearings* and *Erxleben*, Long chose not to file a reply brief. Relaxing its rules to favor one so little inclined to satisfy them is not something an agency is obliged to do. Noncompliance with § 14.2(a) did not turn out to be harmless. For the lack of a good administrative claim, this suit was properly dismissed.

AFFIRMED.