In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-3292

DIANNE KHAN,

*Plaintiff-Appellant,*

*v.*

UNITED STATES OF AMERICA, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:14-cv-00285-LA — **Lynn Adelman**, *Judge.*

ARGUED NOVEMBER 18, 2015—DECIDED DECEMBER 23, 2015

Before POSNER, MANION, and SYKES, *Circuit Judges.*

POSNER, *Circuit Judge.* In 2006, twelve U.S. Marshals arrested Dianne Khan in her apartment for making false statements to the federal Department of Housing and Urban Development. (She was found guilty of the offense later that year and sentenced to five years' probation.) The marshals were waiting for her in the apartment, and when she entered they confronted her at gunpoint. Why twelve marshals with

drawn guns were thought necessary to arrest a woman for a nonviolent offense has not been explained. When she asked to use the bathroom, a marshal first patted her down and then watched her pull down her underwear, urinate, and wipe and cleanse herself according to a Muslim ritual that she observes. The marshals handcuffed her and refused to allow her to cover her head. And while attempting to buckle her seatbelt in the back seat of the squad car that was to take her to jail, a marshal touched her breasts three or four times, though apparently this was attributable to his clumsiness, rather than being intentional.

In June, three months after her arrest, Khan wrote to the Marshals Service Office of Inspection (now called the Office of Professional Responsibility) describing the indignities to which she'd been subjected during the arrest and complaining about the absence of any female agents, her having to expose herself to a male agent in her bathroom, being patted down, and having her breasts touched by a male agent because he didn't know how to fasten the seat belt on her.

The letter did not ask the Office of Inspection to discipline the marshals who had arrested her or pay her compensation for the way she'd been treated—which, if her allegations are true (a big if, since we have only her allegations), seems indeed improper. The Office replied to the letter about two weeks later, stating that it took her complaint of mistreatment by the arresting marshals "very seriously." But in a second letter, sent three months later, the Chief of the Office of Inspection told her she was "not entitled to know the outcome of the investigation" because of "privacy issues." Three years later, however, through the intercession of a Senator, Khan learned that the Marshals Service had in

2006 "reviewed the incident and found no evidence of misconduct" and had therefore "closed the case."

Six years passed before she wrote another letter to the Marshals Service, this one insisting that it "settle this matter." Again she did not request compensation. The Service did not respond to the letter or pay any further attention to the matter.

In September 2013—more than seven years after the arrest—Khan mailed the Marshals Service an administrative claim on Standard Form 95 (the form routinely used to present tort claims against the United States) requesting $4 million in damages. The Service replied that the Federal Tort Claims Act places a two-year limit on filing claims alleging misconduct by federal officers, 28 U.S.C. § 2401(b), and therefore her claim was untimely.

Six months later she filed this lawsuit against both the United States and the arresting marshals, suing the United States under the Federal Tort Claims Act and the marshals under the *Bivens* doctrine, which allows suits against federal employees for violation of constitutional rights. *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). The district court dismissed the suit as time-barred. Although generally a plaintiff is not required to plead around an affirmative defense, such as a statute of limitations, the district court can dismiss a complaint as untimely if the plaintiff has admitted all the elements of the affirmative defense, see *Cancer Foundation, Inc. v. Cerberus Capital Management, LP*, 559 F.3d 671, 674–75 (7th Cir. 2009), as the plaintiff in this case had.

A plaintiff who sues a federal agency under the Tort Claims Act must first submit her claim to the agency; not until it's denied can she sue. 28 U.S.C. § 2675(a). The Act establishes deadlines for filing claims, both with the agency and (if denied) in a court. Khan's principal argument on appeal is that the June 2006 letter to the Marshals Service was an administrative claim that satisfied the requirement of filing a claim with the agency within two years. See 28 U.S.C. § 2401(b). She also argues that she sued within six months of the agency's final denial of the claim and thus satisfied the second deadline (the deadline for suing) in that section.

We start with her second contention. Three years after sending her first letter Khan learned that the Marshals Service had decided that her claim of having been mistreated by the arresting marshals had no merit. If that 2009 letter is deemed a claim denial, Khan is out of luck, not having sued within six months of the denial, the deadline in section 2401(b). But she'd learned of the denial of her claim secondhand, through the intervention of the Senator. The Service had failed (indeed refused) to notify her of the denial; perhaps then there was no final denial. But even we therefore treat the letter denying the claim for damages that she made later, in September 2013, as the definitive denial of her claim—in which event her suit was filed within the six-month deadline—the suit was untimely because of Khan's failure to comply with the requirement in section 2401(b) that the administrative claim be presented to the federal agency within two years of its accrual. Though her June 2006 letter had been filed within two years of her arrest, and the date of the arrest was the date of the accrual, that letter was not a proper administrative claim because it had not demanded any damages, as required by a regulation, 28 C.F.R.

§ 14.2(a), the validity of which she doesn't challenge. The regulation states, so far as pertains to this case, that "a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident."

Failure to specify a "sum certain" is not fatal, however, see *Kanar v. United States*, 118 F.3d 527, 529 (7th Cir. 1997), as it is unlikely to derail the settlement process, which the regulation is designed to facilitate, and as the claimant may not yet have been able to calculate her precise loss. *Id.* at 529, 531. All that must be specified, therefore, is "facts plus a demand for money;" if those two things are specified, "the claim encompasses any cause of action fairly implicit in the facts." *Murrey v. United States*, 73 F.3d 1448, 1452 (7th Cir. 1996). But as "facts plus a demand for money" must be specified, failure to ask for *any* damages—any money—is fatal. See *Smoke Shop, LLC v. United States*, 761 F.3d 779, 787–88 (7th Cir. 2014). As it should be. Khan's first letter would have created the impression that the "claimant" was seeking something other than money—such as an apology for the misconduct of the arresting marshals, or punishment of them, or better training of marshals. It would not have been apparent that she was contemplating suit. The Marshals Service might have been deceived into thinking it needn't prepare a defense or attempt to negotiate a settlement.

Khan's suit is thus untimely under section 2401(b), but she has an argument that it's timely under 28 U.S.C.

§ 2401(a). That section provides that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." The plaintiff argues that her right of action first accrued in September 2013, when the Marshals Service denied her claim, and if this is correct then her suit, filed the next year, was of course timely under section 2401(a). The Service counters that if as Khan contends her June 2006 letter was the claim, her right of action first accrued late in 2006, when six months had elapsed with no response from the Marshals Service. It points to 28 U.S.C. § 2675(a), which says that when an agency fails to decide a claim within six months, its failure shall "at the option of the claimant any time thereafter, be deemed a final denial of the claim." She did not sue by December 2012, six years after that final denial.

Though the foregoing analysis of section 2401(a) is plausible, we don't need or want to decide when a right of action accrues under that section because the section turns out to be inapplicable to this case. Although it establishes a six-year limitations period for "every civil action commenced against the United States," section 2401(b), discussed earlier in this opinion, refers specifically to tort claims: "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." The plaintiff's claim was unquestionably a tort claim, as it alleged assault—pointing guns at her gratuitously—and battery and intentional infliction of emotional distress. And *United States v. Glenn*, 231

F.2d 884, 886 (9th Cir. 1956), noting that section 2401(b) originated in the Federal Tort Claims Act, holds sensibly that (b) rather than (a) governs tort suits against the federal government. The reasoning in *Glenn* has been followed in *Pittman v. United States*, 341 F.2d 739, 740 (9th Cir. 1965); *Schuler v. United States*, 628 F.2d 199, 201 (D.C. Cir. 1980); *Conn v. United States*, 867 F.2d 916, 920 (6th Cir. 1989); and *Carter v. United States*, 55 Fed. App'x 464, 465 (9th Cir. 2003). The analysis in the cases we've just cited is persuasive.

Parenthetically we note that even if section 2401(a) were applicable to claims under the Federal Tort Claims Act, it would not come into play in all FTCA suits. The Act incorporates the substantive law of the state where the tort occurred, *Midwest Knitting Mills, Inc. v. United States*, 950 F.2d 1295, 1297 (7th Cir. 1991), and many states have statutes of repose for tort actions, statutes that would cut off a plaintiff's right to sue before the time bar in section 2401(a) kicked in. Cf. *Augutis v. United States*, 732 F.3d 749, 752–53 (7th Cir. 2013).

As for the *Bivens* defendants, the plaintiff's claim against them clearly is time-barred. Because her arrest was in Wisconsin, the applicable statute of limitations is Wisconsin's six-year statute of limitations for a variety of tort suits. Wis. Stat. § 893.53; *Reget v. City of La Crosse*, 595 F.3d 691, 694 (7th Cir. 2010); *Malone v. Corrections Corp. of America*, 553 F.3d 540, 542 (7th Cir. 2009). The statute of limitations begins to run when a plaintiff knows she's been injured. See, e.g., *Leavell v. Kieffer*, 189 F.3d 492, 495 (7th Cir. 1999). That was in 2006 in this case. Khan didn't file suit until 2014—eight years later.

The judgment of the district court is

AFFIRMED.